STATE of Wisconsin, Plaintiff-Respondent,

v.

Terion Lamar ROBINSON,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2008AP266–CR. Oral argument April 13, 2010.
—Decided July 15, 2010.*

2010 WI 80

(Also reported in 786 N.W.2d 463.)

For the defendant-appellant-petitioner there were briefs and oral by *Melinda A. Swartz,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Michael C. Sanders,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published decision of the court of appeals[1] that affirmed a judgment of conviction entered upon a guilty plea by the Milwaukee County Circuit Court, Joseph R. Wall, Judge. Acting upon an anonymous informant's tip and what they believed to be an outstanding felony arrest warrant, police officers forcibly entered and subsequently searched the apartment of Terion Lamar Robinson (Robinson). Following the circuit court's denial of his motion to suppress, Robinson pled guilty to one count of possession with intent to deliver tetrahydrocannabinols (THC), 200 grams or less, in violation of Wis. Stat. § 961.41(1m)(h)1 (2005–06).[2] On appeal, Robinson argues that the officers' warrantless entry into his apartment and subse-

---

[1] *State v. Robinson,* 2009 WI App 97, 320 Wis. 2d 689, 770 N.W.2d 721.

[2] All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

Wisconsin Stat. § 961.41(1m) "Possession with intent to manufacture, distribute or deliver" provides in relevant part:

> Except as authorized by this chapter, it is unlawful for any person to possess, with intent to manufacture, distribute or deliver, a controlled substance or a controlled substance analog. Intent under this subsection may be demonstrated by, without limitation because of enumeration, evidence of the quantity and monetary value of the substances possessed, the possession of

quent search violated his constitutional rights against unreasonable searches and seizures. We disagree and therefore affirm the court of appeals decision.

¶ 2. The dispositive issue in this case is whether the police officers' warrantless entry into Robinson's apartment and subsequent search was supported by probable cause and justified by exigent circumstances when the officers corroborated three of the four details relayed by an anonymous informant, knocked and announced their presence, and immediately heard footsteps running from the door.

¶ 3. Assuming without deciding that the commitment order for unpaid fines did not constitute an arrest warrant and therefore was insufficient to permit the police officers' lawful entry into Robinson's apartment, we conclude that the warrantless entry was nevertheless reasonable because it was supported by probable cause and justified by exigent circumstances. First, we determine that the police officers' warrantless entry into Robinson's apartment was supported by probable cause. Because the officers corroborated each of the three preliminary details provided by the anonymous informant, it was reasonable for the officers to then

manufacturing implements or paraphernalia, and the activities or statements of the person in possession of the controlled substance or a controlled substance analog prior to and after the alleged violation. Any person who violates this subsection is subject to the following penalties:

. . . .

(h) Tetrahydrocannabinols. If a person violates this subsection with respect to tetrahydrocannabinols, included under s. 961.14(4)(t), or a controlled substance analog of tetrahydrocannabinols, and the amount possessed, with intent to manufacture, distribute, or deliver, is:

1. Two hundred grams or less, or 4 or fewer plants containing tetrahydrocannabinols, the person is guilty of a Class I felony.

309

believe, as the informant had alleged, that evidence of illegal drug activity would probably be found in Robinson's apartment. Second, we conclude that the police officers' warrantless entry into Robinson's apartment was justified by exigent circumstances. Once Robinson was aware of the officers' presence outside his door and footsteps were immediately heard running from the door, the officers reasonably believed that Robinson would destroy evidence of his illegal drug activity. Finally, we conclude that once inside the apartment, the officers lawfully seized the evidence in plain view and arrested Robinson.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶ 4. On November 6, 2006, an anonymous citizen walked into Milwaukee's District Five police station and informed Officer Wesam Yaghnam (Officer Yaghnam) that a man by the name of Terion Robinson was selling marijuana out of his apartment. The citizen provided Officer Yaghnam with Robinson's complete address, 7233 North 38th Street in Milwaukee, Apartment 8, in addition to Robinson's cell phone number.

¶ 5. Officer Yaghnam then conducted a warrant check on the Crime Information Bureau (CIB) and the National Crime Information Center (NCIC) databases.[3] According to Officer Yaghnam's testimony at the suppression hearing, his search revealed that Robinson

---

[3] The CIB operates and manages a law enforcement message switch and network system that provides criminal justice employees with a wide variety of information, including "wants and warrants, driver license and vehicle registration information, criminal histories, protection order and injunction files, sex offender and corrections information, stolen property, miss-

"had two open warrants," one for a "family offense" and another for "the possession of [or] delivery of a controlled substance." Listed on the screen were the names of the warrants, what the warrants were for, and their case numbers. The warrant for possession or delivery of a controlled substance had a felony case number.

¶ 6. Consistent with his usual practice, Officer Yaghnam did not pull the warrants and testified that he does not always have the capability of doing so. Instead, "[a]ll [the officers] do is [] run on the system. If it comes back with a warrant, then that is in good faith, and that is how [they] arrest."

¶ 7. After conducting the warrant check, Officer Yaghnam and several other officers[4] went to the address identified by the anonymous informant as Robinson's apartment. The officers did not seek a search warrant, as they were intending to conduct a "knock and talk."[5] The officers were let into the building by another resident. Some officers, including Officer

ing persons and more." Wisconsin Department of Justice, Law Enforcement Services: CIB, http://www.doj.state.wi.us/dles/cib/ (last visited July 6, 2010).

The NCIC, described by the Federal Bureau of Investigation (FBI) as "the lifeline of law enforcement," is an electronic clearinghouse of crime data that enables criminal justice agencies nationwide to "apprehend fugitives, locate missing persons, recover stolen property, and identify terrorists." FBI, NCIC: The National Crime Information Center, http://www.fbi.gov/hq/cjisd/ncic.htm (last visited July 6, 2010).

[4] According to Officer Yaghnam's testimony, he and his partner were joined by five other squads for a total of eight officers.

[5] The Seventh Circuit Court of Appeals explained the "knock and talk" technique in *United States v. Johnson*, 170 F.3d 708, 711 (7th Cir. 1999):

Yaghnam, proceeded upstairs to Apartment 8, while others remained outside to secure the exits.

¶ 8. According to Officer Yaghnam, the officers knocked on the door to Apartment 8 several times with no answer. They knocked again and heard movement inside the apartment, leading them to believe that somebody was inside. At that point, Officer Yaghnam called the cell phone number provided by the anonymous informant. A phone rang on the other side of the door, but nobody answered. Officer Yaghnam described the succeeding events as follows:

Q [Attorney Merten, on behalf of the State]: What happened next?

A [Officer Yaghnam]: I then knocked on the door again, and then a male voice replied, "Who is it?" I then replied, "Terion?" And he stated, "Yes," actually, "Yeah." Then I identified myself as, "The Milwaukee police department. You need to open the door." And that is when I heard footsteps running from the door.

Q: And when you said you heard footsteps running from the door, was that—how quickly after the fact that you identified yourself as a Milwaukee Police Department officer did you hear that?

[I]n a "knock and talk," the police approach a house or apartment in which they suspect drug dealing is occurring. They listen outside the door for a brief period of time, and then they knock on the door and attempt to persuade whoever answers to give them permission to enter. If consent is forthcoming, they enter and interview the occupants of the place; if it is not, they try to see from their vantage point at the door whether drug paraphernalia or contraband is in plain view. If it is, then they make a warrantless entry. As this description makes plain, the "knock and talk" procedure typically does not involve the prior issuance of a warrant.

*See also State v. Phillips,* 2009 WI App 179, ¶ 11 n.6, 322 Wis. 2d 576, 778 N.W.2d 157.

A: Immediately.

. . . .

Q: And when you heard those footsteps, what did you do then?

A: Then, fearing for the safety of possibly him destroying evidence or escaping, we then forced entry into the building, into the apartment.

Q: How soon did you force entry after you heard those footsteps?

A: Immediately.

Q: And how did you force entry?

A: By kicking open the door.

¶ 9.  After Officer Yaghnam kicked open the door, he and the other officers proceeded into the apartment. Upon entering the residence, Officer Yaghnam identified a "pretty strong" odor of burnt marijuana. He described the apartment's layout as an "open concept." Immediately to the right of the door was a kitchen, which opened up to a dining room. Robinson was standing in the dining room. The dining room flowed into a living room, where the officers found a female later identified as Roxanne Reindl (Reindl). The apartment had a balcony exit, accessible by a sliding door located between the dining room and living room. Officer Yaghnam observed loose marijuana on a coffee table in the living room and several individual bags of marijuana inside an open cooler next to the couch.

¶ 10.  Officer Yaghnam arrested Robinson, citing as the basis Robinson's "open warrants."[6] He then searched Robinson's person and recovered "a large

---

[6] The officers also arrested Reindl. Her arrest is not at issue in this case.

amount of currency"[7] and a cell phone. The cell phone's number matched the one Officer Yaghnam previously dialed. The officers also seized two digital scales and a box of sandwich baggies; one of the scales and the baggies were taken from the kitchen counter.[8]

¶ 11. On November 8, 2006, Robinson was charged with one count of possession with intent to deliver THC, more than 200 grams but not more than 1,000 grams, in violation of Wis. Stat. § 961.41(1m)(h)2. On January 7, 2007, Robinson moved to suppress all evidence obtained from his apartment on the grounds that it was the fruit of an unlawful entry.

¶ 12. On January 10, 2007, the circuit court conducted a hearing on Robinson's motion to suppress, at which Robinson largely corroborated Officer Yaghnam's testimony. Robinson recalled hearing knocks on his apartment door[9] on November 6, 2006, immediately followed by his cell phone ringing. He testified that he silenced his ringer and then went to the door to look out the peep hole, but the peep hole was covered. When he asked who was there, someone responded, "Milwaukee Police Department. Open up." According to Robinson, he then replied, " 'No, thank you,' and walked away from the door, and they started kicking in the door." He denied running from the door and stated that he was not wearing shoes at the time.

---

[7] According to the complaint, Robinson was in possession of $1,800.

[8] Officer Yaghnam acknowledged that the second scale was not in plain view and was instead located in a closet adjacent to Robinson's bedroom. The circuit court deemed that scale inadmissible.

[9] Robinson initially denied residing at the apartment, testifying that it was not his residence but instead his girlfriend's. He has since abandoned that argument.

¶ 13. Robinson also denied smoking marijuana that day but testified that Reindl was. He admitted that a strong odor of marijuana was in the air in his apartment and that marijuana was on the coffee table. When asked if he was aware that marijuana was also in the cooler, he responded that he was not: "I seen the weed that was on the table. [The cooler] couldn't have been—[i]t had to have been out of sight."

¶ 14. Reindl also testified at the suppression hearing. She recalled visiting Robinson at his apartment on November 6, 2006, and smoking "[a] little bit" of marijuana.

¶ 15. At the close of the suppression hearing, it came to light that what Officer Yaghnam thought was an open felony warrant for possession or delivery of a controlled substance was actually a commitment order for unpaid fines. In particular, on September 29, 2006, the Milwaukee County Circuit Court issued a commitment order for unpaid fines stemming from Robinson's 1998 conviction for manufacturing or delivering THC. According to court records, on December 18, 1998, then-circuit court Judge Kitty K. Brennan[10] sentenced Robinson to 12 months imprisonment and ordered him to "pay a fine in the amount of $500.00 plus all costs and surcharges at $50.00 a month, starting 3/1/99 and thereafter on the first of every month or serve 60 days STRAIGHT TIME in the House of Correction consecutive to any other sentence." The commitment order was signed by an assistant to the Clerk of Circuit Court and

---

[10] Prior to oral argument before this court, the State filed a letter informing us that Judge Brennan was a member of the court of appeals panel that decided this case. The matter was not brought to the court of appeals' attention, and neither Robinson nor the State has briefed or filed a motion on the issue before this court. We therefore will not address it further.

ordered that "any law enforcement officer arrest and detain Terion L[.] Robinson Jr[.] in custody for 60 days or until $1026.50 is paid."

¶ 16. On March 14, 2007, the circuit court issued an oral decision denying Robinson's motion to suppress. The court adopted Officer Yaghnam's testimony as its findings of fact, noting that "[e]ven Terion Robinson's version of all of this [wa]s not that much different than the police['s]." In particular, the court made a threshold finding that the officers, relying on the CIB and NCIC databases, believed that Robinson was subject to an outstanding felony arrest warrant for manufacturing or delivering marijuana. Citing *State v. Collins,* 122 Wis. 2d 320, 326, 363 N.W.2d 229 (1984), the circuit court concluded that the evidence should not be suppressed because the officers believed they had a valid arrest warrant which authorized entry into Robinson's apartment.

¶ 17. As alternative grounds for denying Robinson's motion to suppress, the circuit court applied *State v. Hughes,* 2000 WI 24, 233 Wis. 2d 280, 607 N.W.2d 621, and determined that the officers' otherwise warrantless entry into Robinson's apartment was supported by probable cause and justified by exigent circumstances. The court concluded that the officers had probable cause to believe that the apartment contained evidence of a crime because they confirmed information relayed by the anonymous informant, specifically Robinson's apartment number and his cell phone number. In addition, the court believed Officer Yaghnam's testimony that he heard footsteps running from the door and consequently feared the destruction of evidence.

¶ 18. Following the circuit court's denial of his motion to suppress, Robinson pled guilty to a reduced charge of one count of possession with intent to deliver THC, 200 grams or less, and the circuit court entered judgment of conviction.

¶ 19. Robinson appealed his conviction and the order denying his motion to suppress. On June 30, 2009, the court of appeals affirmed. *State v. Robinson,* 2009 WI App 97, 320 Wis. 2d 689, 770 N.W.2d 721. Assuming without deciding that the commitment order was insufficient to permit the officers' lawful entry into Robinson's apartment, the court of appeals concluded that the evidence derived from the warrantless entry and search was nevertheless admissible under the good faith exception to the exclusionary rule. *Id.,* ¶ 1 (citing *United States v. Leon,* 468 U.S. 897 (1984); *State v. Eason,* 2001 WI 98, 245 Wis. 2d 206, 629 N.W.2d 625). The court determined that Officer Yaghnam had a good faith belief that what he discovered on the CIB and NCIC databases was an open felony warrant for Robinson's arrest. *Id.,* ¶ 11. Recognizing that police reliance on those databases is considered standard operating procedure, the court declined to suppress evidence obtained as a result: " 'Suppressing evidence obtained in a situation where a reasonable officer would believe an arrest warrant existed would not help to deter misconduct by arresting officers, because there is no misconduct to deter.' " *Id.* (quoting *Collins,* 122 Wis. 2d at 326).

¶ 20. In addition, like the circuit court, the court of appeals determined that the officers' warrantless entry was alternatively justified by exigent circumstances: "Robinson was in the identified apartment and had the cell phone number given by the informant. When the police heard footsteps moving away from the

317

door suggesting a possible escape attempt or a destruction of evidence, exigent circumstances were created permitting the officers to kick in the door." *Id.*, ¶ 17.

¶ 21.   Robinson petitioned this court for review, which we granted on November 12, 2009. We now affirm.

## II. STANDARD OF REVIEW

¶ 22.   Our review of an order granting or denying a motion to suppress evidence presents a question of constitutional fact. *Hughes,* 233 Wis. 2d 280, ¶ 15. When presented with a question of constitutional fact, this court engages in a two-step inquiry. *State v. Pallone,* 2000 WI 77, ¶ 27, 236 Wis. 2d 162, 613 N.W.2d 568; *Hughes,* 233 Wis. 2d 280, ¶ 15. First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous. *See State v. Popke,* 2009 WI 37, ¶ 10, 317 Wis. 2d 118, 765 N.W.2d 569; *Pallone,* 236 Wis. 2d 162, ¶ 27; *Hughes,* 233 Wis. 2d 280, ¶ 15. Second, we independently apply constitutional principles to those facts. *Pallone,* 236 Wis. 2d 162, ¶ 27; *Hughes,* 233 Wis. 2d 280, ¶ 15; *State v. Limon,* 2008 WI App 77, ¶ 12, 312 Wis. 2d 174, 751 N.W.2d 877.

## III. ANALYSIS

¶ 23.   In this case, we assume without deciding that the commitment order for unpaid fines did not constitute an arrest warrant and therefore was insufficient to permit the police officers' lawful entry into Robinson's apartment. We need not determine whether the good faith exception to the exclusionary rule applies

318

because we conclude that the officers' warrantless entry and subsequent search was justified on the more narrow grounds of probable cause and exigent circumstances.

■

¶ 24. The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; Wis. Const. art. 1, § 11.[11] Because physical entry of the home is deemed " 'the chief evil against which the wording of the Fourth Amendment is directed,' " *Payton v. New York*, 445 U.S. 573, 585

---

[11] The Fourth Amendment to the United States Constitution provides in full:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 11 of the Wisconsin Constitution similarly states:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

As a general rule, we historically interpret the search and seizure provision of our state's constitution consistent with the United States Supreme Court's interpretation of the Fourth Amendment. *See State v. Pallone*, 2000 WI 77, ¶ 28, 236 Wis. 2d 162, 613 N.W.2d 568; *State v. Hughes*, 2000 WI 24, ¶ 17 n.6, 233 Wis. 2d 280, 607 N.W.2d 621; *State v. DeSmidt*, 155 Wis. 2d 119, 130, 454 N.W.2d 780 (1990); *State v. Limon*, 2008 WI App 77, ¶ 11 n.5, 312 Wis. 2d 174, 751 N.W.2d 877.

(1980) (quoting *United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div.,* 407 U.S. 297, 313 (1972)), warrantless searches of homes are presumptively unreasonable, *Welsh v. Wisconsin,* 466 U.S. 740, 749 (1984); *Payton,* 445 U.S. at 586; *Pallone,* 236 Wis. 2d 162, ¶¶ 29, 59; *Hughes,* 233 Wis. 2d 280, ¶ 17. However, the doctrine of exigent circumstances is one of the well-recognized exceptions to the warrant requirement. *See Payton,* 445 U.S. at 590; *Hughes,* 233 Wis. 2d 280, ¶ 17; *State v. Smith,* 131 Wis. 2d 220, 228, 388 N.W.2d 601 (1986). The exception recognizes that in special circumstances, when there is an urgent need coupled with insufficient time to obtain a warrant, "it would be unrealistic and contrary to public policy to bar law enforcement officials at the doorstep." *Smith,* 131 Wis. 2d at 228. In such instances, an individual's substantial right to privacy in his or her home must give way to the compelling public interest in effective law enforcement. *See Hughes,* 233 Wis. 2d 280, ¶ 16; *Smith,* 131 Wis. 2d at 228. The government bears the burden of showing that the warrantless entry was both supported by probable cause and justified by exigent circumstances. *See Welsh,* 466 U.S. at 750; *Pallone,* 236 Wis. 2d 162, ¶ 29; *Hughes,* 233 Wis. 2d 280, ¶ 17; *Smith,* 131 Wis. 2d at 228.

¶ 25.   In this case, we conclude that the State has satisfied its burden of demonstrating that the police officers' warrantless entry into Robinson's apartment was both supported by probable cause and justified by exigent circumstances. We will analyze each requirement in turn.

### A. Probable Cause

¶ 26.   The Fourth Amendment to the U.S. Constitution and Article I, Section 11 of the Wisconsin Con-

stitution "require[] probable cause to support every search or seizure in order to 'safeguard the privacy and security of individuals against arbitrary invasions by government officials.' " *Hughes,* 233 Wis. 2d 280, ¶ 19 (quoting *State v. DeSmidt,* 155 Wis. 2d 119, 130, 454 N.W.2d 780 (1990)). In the search context, probable cause requires a " 'fair probability' that contraband or evidence of a crime will be found in a particular place." *Hughes,* 233 Wis. 2d 280, ¶ 21 (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)); *see also State v. Carroll,* 2010 WI 8, ¶ 28, 322 Wis. 2d 299, 778 N.W.2d 1. We evaluate the existence of probable cause objectively, concerned with whether law enforcement acted reasonably. *See Illinois v. Rodriguez,* 497 U.S. 177, 185 (1990) ("[I]n order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government—whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement—is not that they always be correct, but that they always be reasonable."); *Gates,* 462 U.S. at 231 (" 'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " (quoting *Brinegar v. United States,* 338 U.S. 160, 175 (1949))); *Hughes,* 233 Wis. 2d 280, ¶ 23. In other words, in this case, we must determine whether it was reasonable for Officer Yaghnam and the other police officers to believe that evidence of illegal drug activity would probably be found in Apartment 8. *See Hughes,* 233 Wis. 2d 280, ¶ 23. We conclude that it was.

¶ 27.  The officers were acting upon an anonymous informant's tip that Robinson was selling marijuana out of his apartment. Considered within the totality of the circumstances, the value and reliability of an informant's tip "may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Gates,* 462 U.S. at 230. The U.S. Supreme Court has recognized the particular value of law enforcement's corroboration of details of an informant's tip. *Id.* at 241. " 'Because an informant is right about some things, he is more probably right about other facts.' " *Id.* at 244 (quoting *Spinelli v. United States,* 393 U.S. 410, 427 (1969) (White, J., concurring)). That is, police corroboration of innocent, although significant, details of an informant's tip lend reliability to the informant's allegations of criminal activity. *See State v. Williams,* 2001 WI 21, ¶¶ 39–40, 241 Wis. 2d 631, 623 N.W.2d 106. For purposes of making a practical, common-sense determination of probable cause, that is sufficient. *Gates,* 462 U.S. at 244–45 ("It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.' " (quoting *Jones v. United States,* 362 U.S. 257, 271 (1960))).

¶ 28.   In this case, the officers corroborated three of the four details relayed by the anonymous informant. According to Officer Yaghnam's testimony,[12] the infor-

---

[12] The circuit court adopted Officer Yaghnam's testimony as its findings of fact. We uphold those findings as they are not

mant provided the following four details: (1) Someone named Terion Robinson, (2) who lived in Apartment 8 at 7233 North 38th Street in Milwaukee (3) with cell phone number [], (4) was selling marijuana out of his apartment. While the informant failed to explain how he came to know of the inside information, the specificity of his information and the fact that he personally walked into the police station supported his credibility. Indeed, the informant was "anonymous" only to the extent that he was nameless. He jeopardized his anonymity by approaching Officer Yaghnam in person. *See Limon,* 312 Wis. 2d 174, ¶ 18. "Risking one's identification intimates that, more likely than not, the informant is a genuinely concerned citizen as opposed to a fallacious prankster." *Williams,* 241 Wis. 2d 631, ¶ 35.

¶ 29.   In the midst of their "knock and talk," the officers corroborated each of the three preliminary details provided by the anonymous informant: Robinson's name, his address, and his cell phone number. According to Officer Yaghnam's testimony, after he knocked on the door to Apartment 8, a male voice questioned from inside, "Who is it?" Officer Yaghnam replied, "Terion?" The male voice then answered, "Yeah." When Officer Yaghnam dialed the cell phone number identified by the informant as Robinson's, a phone immediately rang on the other side of the door. It was therefore reasonable for the officers to believe, just as the informant had said, that Terion Robinson resided in Apartment 8. The officers' corroboration of innocent, although significant, details of the informant's tip lent

clearly erroneous. *See Pallone,* 236 Wis. 2d 162, ¶ 27; *Hughes,* 233 Wis. 2d 280, ¶ 15. This is particularly true because, as the circuit court pointed out, Robinson himself confirmed much of Officer Yaghnam's testimony.

reliability to the informant's allegation that Robinson was selling marijuana out of his apartment. *See Williams,* 241 Wis. 2d 631, ¶ 40. The officers may not have corroborated the substantive allegation of criminal activity, but that is not what probable cause demands:

> [P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands. . . .

*Gates,* 462 U.S. at 243 n.13. Moreover, regardless of whether or not the commitment order constituted an arrest warrant, a question which we do not decide, it remains that the officers believed that Robinson was subject to an outstanding felony arrest warrant for manufacturing or delivering marijuana. In the least, the officers were cognizant of the fact that Robinson was previously charged with illegal drug activity. That knowledge further lent reliability to the informant's allegation that Robinson was selling marijuana. Because the officers corroborated each of the three preliminary details provided by the anonymous informant, we conclude that it was reasonable for the officers to then believe, as the informant had alleged, that evidence of illegal drug activity would probably be found in Apartment 8. Accordingly, the State has satisfied its burden of demonstrating that the police officers' warrantless entry into Robinson's apartment was supported by probable cause. We now turn to the State's requisite showing of exigent circumstances.

## B. Exigent Circumstances

¶ 30. Consistent with the U.S. Supreme Court, *see, e.g., Brigham City, Utah v. Stuart,* 547 U.S. 398, 403 (2006); *Georgia v. Randolph,* 547 U.S. 103, 116 n.6. (2006); *Welsh,* 466 U.S. at 750, this court has recognized four circumstances which, when measured against the time required to procure a warrant, constitute exigent circumstances that justify a warrantless entry: (1) an arrest made in "hot pursuit," (2) a threat to the safety of the suspect or others, (3) a risk that evidence will be destroyed, and (4) a likelihood that the suspect will flee. *Hughes,* 233 Wis. 2d 280, ¶ 25; *Smith,* 131 Wis. 2d at 229. Like our analysis of probable cause, the test for determining the existence of exigent circumstances is an objective one. *See Brigham City,* 547 U.S. at 403–04; *Smith,* 131 Wis. 2d at 230. We must determine whether the police officers under the circumstances known to them at the time reasonably believed that a delay in procuring a warrant would gravely endanger safety, risk the destruction of evidence, or enhance the likelihood that the suspect will escape. *Smith,* 131 Wis. 2d at 230.

¶ 31. In this case, we conclude that the police officers' warrantless entry into Robinson's apartment was justified by exigent circumstances because the officers reasonably believed that a delay in procuring a warrant would risk the destruction of evidence. Officer Yaghnam testified that after knocking on the door to Apartment 8 and identifying himself as the Milwaukee Police Department, he "heard footsteps running from the door." Because he "fear[ed] for the safety of possibly

325

[Robinson] destroying evidence,"[13] he forced entry into the apartment by kicking open the door. Once Robinson was aware of the officers' presence outside his door and footsteps were immediately heard running from the door, it was certainly reasonable for the officers to assume that Robinson would destroy evidence of his illegal drug activity. Drugs like marijuana are easily and quickly destroyed. *See Hughes,* 233 Wis. 2d 280, ¶ 26; *State v. Henderson,* 2001 WI 97, ¶ 38, 245 Wis. 2d 345, 629 N.W.2d 613. Under all the circumstances of this case, Robinson had every incentive to intentionally destroy evidence of the marijuana in order to avoid its discovery. *See Hughes,* 233 Wis. 2d 280, ¶ 27. "Had the officers stayed outside and called for a warrant, the evidence very likely would have been lost." *Id.*

¶ 32.  Robinson argues that to the extent the officers' knock and announcement led to the running footsteps, the officers manufactured the exigent circumstances and therefore cannot rely on them. This court has recognized that police officers may not benefit from exigent circumstances that they themselves create. *Id.,* ¶ 28 n.7. However, we disagree with Robinson that the officers impermissibly created the exigent circumstances merely by knocking on his door and announcing their presence. "[W]hen law enforcement agents act in an entirely lawful manner, they do not impermissibly create exigent circumstances." *United*

---

[13] Officer Yaghnam also testified that he feared Robinson's escape. Our conclusion that the officers reasonably believed that a delay in procuring a warrant would risk the destruction of evidence is alone sufficient to give rise to exigency. We therefore need not decide whether the officers reasonably believed that a delay in procuring a warrant would enhance the likelihood of Robinson's escape.

*States v. MacDonald,* 916 F.2d 766, 772 (2d Cir. 1990). By knocking on Robinson's door and announcing themselves as the Milwaukee Police Department, an announcement which in fact was invited by Robinson's question of "Who is it?", the officers were conducting themselves in an utterly appropriate and lawful manner. *See United States v. Collins,* 510 F.3d 697, 700 (7th Cir. 2007) ("[T]here is no legal requirement of obtaining a warrant to knock on someone's door.").[14] Simply because Robinson chose to respond to the officers' lawful conduct by running from the door, thereby leading the officers to believe that he would destroy evidence, does not mean that we ought to overlook the exigent circumstances. *See MacDonald,* 916 F.2d at 771

---

[14] Relying instead on *United States v. Ellis,* 499 F.3d 686 (7th Cir. 2007), *see* dissent, ¶¶ 72–77, the dissent makes no mention of *United States v. Collins,* 510 F.3d 697 (7th Cir. 2007), the more recent Seventh Circuit decision in which the court favorably cited *United States v. MacDonald,* 916 F.2d 766, 772 (2d Cir. 1990). *Collins,* 510 F.3d at 700. In *Collins,* the Seventh Circuit distinguished its set of facts, where there was "no evidence that the officers heard the sound of running feet," *id.* at 699, from those in *MacDonald,* in which the law enforcement agents heard the sound of shuffling feet from inside the apartment. *Id.* at 700 (citing *MacDonald,* 916 F.2d at 771). The Seventh Circuit in *Collins* agreed that suppression of the evidence would not be justified under the facts of *MacDonald. Id.*

Moreover, in its discussion of the Seventh Circuit's earlier decision in *Ellis, see* dissent, ¶¶ 72–77, the dissent leaves out the key facts that distinguish the complicated analysis in *Ellis* from the facts of this case. Among other things, in *Ellis,* the police officer who kicked in the side door made no showing to differentiate the movement he heard inside the home from the reasonable type of movement that could be found in any home following a knock at the door. 499 F.3d at 691.

327

("Exigent circumstances are not to be disregarded simply because the suspects chose to respond to the agents' lawful conduct by attempting to escape, destroy evidence, or engage in any other unlawful activity."). It was not the officers' knock and announcement that created the exigent circumstances. To hold otherwise would defy the very standard of reasonableness considered to be the "ultimate touchstone of the Fourth Amendment." *See Brigham City*, 547 U.S. at 403. Rather, Robinson's choice to run from the door created the exigent circumstances that justified the officers' warrantless entry.

¶ 33. To complete our analysis, we conclude that once inside the apartment, the officers lawfully seized the evidence in plain view and arrested Robinson. Once inside, the officers identified a strong odor of burnt marijuana and observed loose marijuana in plain view on the coffee table, both facts that Robinson himself conceded. Officer Yaghnam also testified that a digital scale and box of sandwich baggies were in plain view on the kitchen counter. The officers were well within their rights to seize the marijuana, digital scale, and sandwich baggies in plain view. *See Harris v. United States,* 390 U.S. 234, 236 (1968) ("It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."); *State v. Johnston,* 184 Wis. 2d 794, 809, 518 N.W.2d 759 (1994). Moreover, Officer Yaghnam was entitled to arrest Robinson because the evidence in plain view gave him probable cause to believe that Robinson had committed a crime. *See United States v. Hensley,* 469 U.S. 221, 235 (1985); *Johnston,* 184 Wis. 2d at 809. Finally, Officer Yaghnam lawfully searched Robinson's person incident to arrest and seized the large amount of currency and

328

Robinson's cell phone. *See* Wis. Stat. § 968.11 (2007–08); *Chimel v. California*, 395 U.S. 752, 763 (1969).

## IV. CONCLUSION

¶ 34. Assuming without deciding that the commitment order for unpaid fines did not constitute an arrest warrant and therefore was insufficient to permit the police officers' lawful entry into Robinson's apartment, we conclude that the warrantless entry was nevertheless reasonable because it was supported by probable cause and justified by exigent circumstances. First, we determine that the police officers' warrantless entry into Robinson's apartment was supported by probable cause. Because the officers corroborated each of the three preliminary details provided by the anonymous informant, it was reasonable for the officers to then believe, as the informant had alleged, that evidence of illegal drug activity would probably be found in Robinson's apartment. Second, we conclude that the police officers' warrantless entry into Robinson's apartment was justified by exigent circumstances. Once Robinson was aware of the officers' presence outside his door and footsteps were immediately heard running from the door, the officers reasonably believed that Robinson would destroy evidence of his illegal drug activity. Finally, we conclude that once inside the apartment, the officers lawfully seized the evidence in plain view and arrested Robinson.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 35. ANN WALSH BRADLEY, J. (*dissenting*). Today, this court decides three cases, each of which involves a search of a Milwaukee home where police

329

officers have some suspicion of drug activity but have not procured a warrant. In each of these three cases, a majority of this court refuses to suppress the evidence because it concludes that one of the narrowly drawn and carefully delineated exceptions to the warrant requirement applies.

¶ 36.  In *State v. Artic,* 2010 WI 83, 327 Wis. 2d 392, 786 N.W.2d 430, officers knock at the front door of a suspected drug house, and when the resident fails to answer, the officers kick down the door. With guns drawn, they knock on an intermediate door on the second floor, and the homeowner answers. Although the homeowner disputes that he consented to the search, this court determines that he consented, that his consent was voluntary, and that the consent exception to the warrant requirement applies.

¶ 37.  In *State v. Pinkard,* 2010 WI 81, 327 Wis. 2d 346, 785 N.W.2d 592, five drug unit officers arrive at an apartment after an anonymous tipster alerts police that there are drugs, a scale, and money present. After the officers knock, announce their presence, and wait for 30 to 45 seconds, they then proceed to enter the residence out of concern for the welfare of the occupants. Although the testimony does not reveal that the officers were concerned about the possibility of an overdose, this court concludes that hypothetically, "an officer could reasonably be concerned that [the occupants] may have overdosed on drugs." *Id.,* ¶ 35. Therefore, it determines that the community caretaking exception to the warrant requirement applies.

¶ 38.  In this case, at least seven officers arrive at an apartment to perform a "knock and talk" after an anonymous tip providing unspecified allegations that the resident is dealing drugs out of the apartment. Officers confirm that the resident is in the apartment,

the resident fails to open the door, and the officers hear running footsteps. They then proceed to kick down the door. This court determines that because the resident is aware of the officers' presence, he has every incentive to intentionally destroy evidence. Under these facts, it determines that the exigent circumstances exception to the warrant requirement applies.

¶ 39.   Courts should refrain from "effectively creat[ing] a situation in which the police have no reason to obtain a warrant when they want to search a home with any type of connections to drugs." *See United States v. Ellis*, 499 F.3d 686, 691 (7th Cir. 2007). Yet, the intersection of these three cases could lead one to conclude that when officers have a generalized suspicion that drug activity is occurring in a home, they need not go through the trouble of procuring a warrant. Rather, they need only execute a knock and talk.

¶ 40.   If the suspect *opens the door*, that suspect may be found to have voluntarily consented to the search. If the suspect *refuses to open the door* and officers hear movement inside, there may be exigent circumstances due to the possibility of the destruction of evidence. If *no one answers the door*, concern for the well-being of the occupants of what sounds like a drug house may justify entry under the community caretaker exception.

¶ 41.   I am concerned that this case, along with the other two cases decided today, dilute the Fourth Amendment by allowing the knock and talk procedure to justify warrantless entry. Both law enforcement officers and courts alike should be mindful that the knock and talk technique rests on constitutionally thin ice.

¶ 42.   In examining the facts of this case, I conclude that the majority errs in determining that probable cause and exigent circumstances were present

here. Because I determine that the warrantless search of Robinson's apartment violates the constitutional protections guaranteed by the Fourth Amendment, I respectfully dissent.

I

¶ 43. The majority correctly acknowledges that the State bears the burden of demonstrating that this warrantless home entry was supported by probable cause and justified by exigent circumstances. Majority op., ¶ 24. It determines that prior to breaking down the door to Apartment 8, the officers had probable cause to believe that evidence of illegal drug activity would be found in the apartment because the officers had corroborated three of the four details provided by the anonymous tipster: Robinson's name, address, and cell phone number. *Id.*, ¶¶ 26, 29. Although it recognizes that the only details corroborated were innocent, it suggests that the "specificity" of the anonymous informant's information and "the fact that he personally walked into the police station" supported his credibility. *Id.*, ¶ 28.

¶ 44. The majority further determines that exigent circumstances were present because, once Robinson was aware of the officers' presence and his footsteps were heard running from the door, a reasonable officer would believe that Robinson would destroy evidence. *Id.*, ¶ 31. The majority acknowledges that officers cannot justify a home entry due to exigent circumstances that they themselves create. *Id.*, ¶ 32. However, citing *United States v. MacDonald*,[1] the majority asserts that officers do not impermissibly create exigent

---

[1] *United States v. MacDonald*, 916 F.2d 766, 771 (2d Cir. 1990).

circumstances when they are acting lawfully. Majority op., ¶ 32. Because officers may lawfully execute a warrantless knock and talk, the majority concludes: "It was not the officers' knock and announcement that created the exigent circumstances." *Id.* Rather, it was "Robinson's choice to run from the door" that created the exigency. *Id.*

¶ 45.  When officers choose to execute a knock and talk rather than seeking a warrant, they are on constitutionally thin ice. The majority fails to recognize this thin ice, and instead ratifies this warrantless search.

¶ 46.  In determining that probable cause and exigent circumstances existed under these facts, the majority makes two distinct errors that "cut[] away the core of the Fourth Amendment's protections, in a way the Supreme Court has never sanctioned[.]" *United States v. Juan Benet Johnson*, 170 F.3d 708, 718 (7th Cir. 1999). First, the majority dilutes the requirement that officers assess the reliability of an anonymous tip. Second, it fails to give meaning to the rule that officers cannot benefit from exigent circumstances that they themselves create.

¶ 47.  I address first the constitutional implications of the knock and talk technique. Then, I address in turn the two distinct errors of the majority that cut at the core of Fourth Amendment protections.

II

¶ 48.  The home occupies a special place in Fourth Amendment jurisprudence. *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984). Warrantless searches of homes are presumptively unreasonable. *Id.* at 748–49. In 1948, the United States Supreme Court cogently described the rationale for requiring officers to procure a warrant

prior to entering a home. It emphasized the role of the neutral and detached magistrate:

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

*Anne Johnson v. United States*, 333 U.S. 10, 13–14 (1948).

¶ 49.   Here, as with the other two cases decided today, officers engaged in the competitive enterprise of ferreting out crime chose not to seek a warrant. Instead, they opted to go to a suspected drug house and perform a "knock and talk."

¶ 50.   A recent commentator has posited that perfunctory review by courts of law enforcement's use of the knock and talk procedure to circumvent the warrant requirement "has severely limited the Fourth Amendment protection afforded to homes, despite the Supreme Court's stance that homes are heavily protected." Craig M. Bradley, *"Knock and Talk" and the Fourth Amendment,* 84 Ind. L.J. 1099, 1099 (2009). He asserts that the " '[k]nock and talk' has become a talisman before which the Fourth Amendment 'fades away and disappears.' " *Id.* at 1127.[2]

---

[2] [T]here is a large swath of police activity that intrudes into dwellings that has been widely allowed by the courts and that often renders the search and arrest warrant requirements nugatory. . . . Under "knock and talk," police go to people's residences, with or without probable cause, and knock on the door to obtain plain views of the interior

¶ 51.   Likewise, courts have been critical of the knock and talk procedure. In *Hayes v. State,* 794 N.E.2d 492, 497 (Ind. App. 2003), the court opined that "[k]nock and talk might more aptly be named 'knock and enter,' because it is usually the officer's goal not merely to talk but to conduct a warrantless search of the premises." It explained that "[w]hile not per se unlawful, the knock and talk procedure 'pushes the envelope' and can easily be misused." *Id.*

¶ 52.   It is curious that the majority chooses to explain the knock and talk procedure with a quotation from the Seventh Circuit case *United States v. Juan Benet Johnson,* 170 F.3d 708. *See* majority op., ¶ 7 n.5.[3] The *Johnson* court was critical of the use of the knock

---

of the house, to question the residents, to seek consent to search, and/or to arrest without a warrant, often based on what they discover during the "knock and talk." When combined with such other exceptions to the warrant requirement as "plain view," consent, and search incident to arrest, "knock and talk" is a powerful investigative technique.

Craig M. Bradley, *"Knock and Talk" and the Fourth Amendment,* 84 Ind. L.J. 1099, 1099 (2009).

[3] In *United States v. Juan Benet Johnson,* 170 F.3d 708, 711 (7th Cir. 1999), the court explained that the knock and talk procedure was often employed by officers in the hopes that they would be able to conduct a warrantless home entry:

[I]n a "knock and talk," the police approach a house or apartment in which they suspect drug dealing is occurring. They listen outside the door for a brief period of time, and then they knock on the door and attempt to persuade whoever answers to give them permission to enter. If consent is forthcoming, they enter and interview the occupants of the place; if it is not, they try to see from their vantage point at the door whether drug paraphernalia is in plain view. If it is, then they made a warrantless entry. As this description makes plain, the "knock and talk" procedure typically does not involve the prior issuance of a warrant.

and talk procedure by Milwaukee police officers who lacked probable cause to secure a warrant. It explained: "We do not hold today that the 'knock and talk' technique is automatically unconstitutional. Nevertheless . . . *the police themselves must recognize the inherent limits in this more informal way of proceeding.*" *Id.* at 720 (emphasis added).

¶ 53. The Seventh Circuit is right. Law enforcement officers must recognize the limitations of this more informal way of attempting to gain entry to a home. The three cases decided today demonstrate that this court as well must recognize the limitations of the knock and talk procedure.

¶ 54. In any given case, there is a temptation to stretch and twist the exceptions to the warrant requirement to fit the facts. Often, the court will explain that the case presents a "close call," but an exception to the warrant requirement applies. The exception stretches a little further, and next time it will likely be stretched again. Over time, the narrowly defined exceptions to the Fourth Amendment become the rule.

¶ 55. A court that it is unwilling to provide a check on unconstitutional evidence gathering does a disfavor to law enforcement and citizens alike. It abandons its role and sends the clear message to law enforcement that no one is at the helm. When the players on a team learn that the referee will never call foul, there remains little incentive to play within the rules.

¶ 56. Despite reiterating that warrantless searches are presumptively unreasonable, this court has suppressed evidence procured during a warrantless home search only two times in the last 10 years.[4]

---

[4] *State v. Sanders,* 2008 WI 85, 311 Wis. 2d 257, 752 N.W.2d 713; *State v. Knapp,* 2005 WI 127, 285 Wis. 2d 86, 700 N.W.2d 899.

Today, this court ratifies three more warrantless home searches, based on three different exceptions to the warrant requirement. With this track record and the failure of the courts to place meaningful limitations on the knock and talk technique, I fear that the presumption that warrantless home searches are unreasonable has become an example of a rule that has been swallowed by its exceptions.

## III

¶ 57. The majority errs when it dilutes the requirement that officers assess the reliability of an anonymous tip. It relies heavily on the fact that the informant jeopardized his anonymity by walking into the police station, rather that relaying the tip over the phone. Majority op., ¶ 28.

¶ 58. Yet, that fact alone is not sufficient indicia of reliability to establish probable cause. Wisconsin courts require additional evidence of the reliability of a tip even when it comes from a confidential informant, known to police officers, who has provided reliable information in the past. *State v. Romero,* 2009 WI 32, ¶ 26, 317 Wis. 2d 12, 765 N.W.2d 756. Independent corroboration of the reliability of the tip is required.

¶ 59. The majority is correct that corroboration of innocent, although significant details may provide indicia of the reliability of an anonymous tip. I agree with the majority that Robinson's name, address, and telephone number are "innocent" details corroborated by the officers prior to their decision to kick in Robinson's door.

¶ 60. However, the corroboration of innocent details is not enough. To support a determination that the anonymous informant is reliable, the details must also be "significant."

¶ 61. Unlike the majority, I cannot conclude that the details about Robinson's name, address, and cell phone number are "significant." Various individuals likely have access to this type of identifying information about all of us.

¶ 62. The innocent details provided by this anonymous informant are a far cry from the innocent details that the Supreme Court relied on in *Illinois v. Gates,* 462 U.S. 213 (1983), to corroborate an anonymous tip. In *Gates,* an anonymous letter asserted that Gates was planning a trip to Florida to pick up drugs, and the letter provided details, including date, time, and mode of transportation, of this trip. *Id.* at 213. The letter's detailed predictions were corroborated by the authorities. Based on these corroborated details, a magistrate issued a warrant to search Gates' car. *Id.* On review, the Supreme Court indicated that the tipster had insight into Gates' plan. The Court explained: "It is enough, for purposes of assessing probable cause, that corroboration through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting" the anonymous tip.[5] *Id.* at 244–45.

¶ 63. Similarly, in *State v. Williams,* an anonymous caller described the scene of a purported crime in great detail, including the location of the vehicle, a general description of the vehicle, and the layout of the surroundings. 2001 WI 21, ¶ 39, 241 Wis. 2d 631, 623 N.W.2d 106. The police arrived four minutes later and corroborated those details. Because the caller could describe the scene with such specific detail, it was reasonable to conclude that the caller was recently at

---

[5] Unlike an officer's on-the-spot probable cause determination, an issuing-magistrate's probable cause determination is presumptively reasonable.

the scene and in a position to observe the illegal activity. The *Williams* court explained that its decision conformed with *Gates,* because "[w]here other indicia of reliability exist, predictive information is not necessary to test an anonymous tipster's veracity[.]" *Id.,* ¶ 42.

¶ 64. In both *Gates* and *Williams,* the corroboration of innocent but significant details provided indicia of reliability for the uncorroborated assertions of criminal conduct. The "corroboration" in this case is of an entirely different nature. The fact that the anonymous informant accurately provided Robinson's identifying information is not indicia that the informant has insight into any criminal behavior. It corroborated only that the anonymous informant knew Robinson, or perhaps knew of Robinson.

¶ 65. Reasonable suspicion is a lower standard than probable cause. Yet, the Court has held that the kinds of innocent details provided here are insufficient to establish reasonable suspicion of criminal conduct. Rather than containing "significant" details, the anonymous tip in this case looks like the type of "bare-bones tip" that was rejected in *Florida v. J.L.,* 529 U.S. 266 (2000).

¶ 66. In *J.L.,* an anonymous caller reported to the Miami-Dade Police that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." *Id.* at 268. Officers corroborated details about the suspect's identity, but they frisked the young man without corroborating that he was carrying a gun. The State argued that "the tip was reliable because its description of the suspect's visible attributes proved accurate: There really was a young black male wearing a plaid shirt at the bus stop."[6] *Id.* at 271.

_____

[6] Similarly, an amici argued that "a stop and frisk should be permitted 'when (1) an anonymous tip provides a description of

¶ 67. The Court determined that "the Fourth Amendment is not so easily satisfied." *Id.* at 273. It explained that an anonymous tip accurately describing the suspect's location and appearance "is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity." *Id.* at 272. To constitute reasonable suspicion, a tip must "be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.*

¶ 68. Similar to the tip in *J.L.*, the anonymous tip here provided information sufficient to identify the person that the tipster meant to accuse. However, it did not demonstrate that the tipster had any knowledge of concealed criminal activity. I conclude that corroboration of innocent details provided by this bare-bones tip did not provide these officers with reasonable suspicion, much less probable cause.

## IV

¶ 69. Like its determination about probable cause, the majority's analysis of exigent circumstances is also incompatible with controlling law. The majority recognizes that under Wisconsin law, officers cannot justify a warrantless home entry based on exigent circumstances that they create. *See State v. Hughes,* 2000 WI 24, ¶ 28 n.7, 233 Wis. 2d 280, 607 N.W.2d 621 ("It is also important to note that this is not a situation

---

a particular person at a particular location illegally carrying a concealed firearm, (2) police promptly verify the pertinent details of the tip except the existence of the firearm, and (3) there are no factors that cast doubt on the reliability of the tip. . . .' " *Florida v. J.L.*, 529 U.S. 266, 271 (2000).

in which the exigency was created by the police themselves, which would generally not justify a warrantless search of a home.") However, citing a Second Circuit opinion that has been roundly criticized,[7] the majority determines that "when law enforcement agents act in an entirely lawful manner, they do not impermissibly create exigent circumstances." Majority op., ¶ 32 (citing *United States v. MacDonald*, 916 F.2d 766, 771 (2d Cir. 1990)).

¶ 70.    The majority's logic appears to be as follows: We know that officers cannot benefit from manufacturing exigent circumstances, thereby circumventing the warrant requirement. However, *MacDonald* holds that officers do not manufacture exigent circumstances when they are in a lawful place. Given that the officers were executing a lawful knock and talk, it must not have been their knock and announcement that created the exigency. Majority op., ¶ 32. Therefore, someone else must have created the exigency. It must have been Robinson, who invited the police to announce their

[7] *United States v. MacDonald*, 916 F.2d 766 (2d Cir. 1990). In dissent, Judge Kearse concluded that "[w]e should not endorse such contrivances by law enforcement officials in their efforts to circumvent the Fourth Amendment's warrant requirement." *Id.* at 776. The dissent's analysis was cited and adopted in *United States v. Coles*, 437 F.3d 361 (3d Cir. 2006). The Fifth Circuit and the Seventh Circuit have also rejected the assertion that officers do not manufacture exigent circumstances when they are in a lawful place. *See United States v. Richard*, 994 F.2d 244 (5th Cir. 1993); *United States v. Ellis*, 499 F.3d 686 (7th Cir. 2007). *See also* Jacqueline Bryks, *Exigent Circumstances and Warrantless Home Entries*: *United States v. MacDonald*, 57 Brook. L. Rev. 307, 312 (1991) (concluding that "the Second Circuit should revisit this area in order to shape an exigent circumstances exception more consistent with the Fourth Amendment.").

presence by asking "Who's there?" and who ran from the door rather than answering it. *Id.*

¶ 71. The *MacDonald* decision is not supported by the law of Wisconsin. *See Hughes,* 233 Wis. 2d 280, ¶ 28 n.7. Further, it is contrary to the case law of the Seventh Circuit and other jurisdictions.

¶ 72. In a recent decision, the Seventh Circuit explained that it is lawful "for the government to knock on the front door of [a] home and ask to come in." *Ellis,* 499 F.3d at 692. However, "once [the resident] said no, the government could not save its case by kicking in the side door." *Id.*

¶ 73. The facts in the *Ellis* case are very similar to the facts before the court today. There, five Milwaukee officers decided to perform a knock and talk at a suspected drug house. When officers arrived at the home, they knew that the registered occupant had two prior drug convictions and that an unknown drug supplier had visited the house a week earlier. *Id.* at 690. Ellis answered the door, but he refused to consent to the officers' warrantless entry. *Id.* at 688.

¶ 74. Officer Lopez was identified as the officer who was standing at the side of the house. *Id.* The facts reflect that what he heard was not mere movement in the house. *Id.* Rather, he heard "a person running up and down the stairs." *Id.* "Hearing [the] movement, Officer Lopez concluded that the occupants in the home were trying to destroy drugs." *Id.* He made the decision to break down the door and enter to prevent the destruction of evidence. *Id.*

¶ 75. The Seventh Circuit held that, under those facts, the officers could not justify their warrantless home entry based upon an exigency that they had created by informing the occupants of their presence:

It was the government's decision to inform the occupants of the 40th Street home that they were targets of a government investigation when the government knocked on the front door and asked for consent to come into the home. The government took a gamble hoping that the occupants would consent to their entry or would open the door revealing contraband in plain sight.

*Id.* at 692.

¶ 76. The court explained that "once Ellis refused to consent, the occupants knew of the government's investigation of the home and so the government was concerned that the occupants might destroy any drugs that could be in the home." *Id.* It acknowledged that "[d]rugs are an easily destroyable form of evidence and therefore an officer's suspicions may be raised when he or she hears movement." *Id.* at 691. Further, "[k]nocking on a door will result in movement in any home because an occupant will move to the door to see who is knocking and possibly to answer the door." *Id.* However, the court admonished, "it was the government's choice to reveal itself to the home occupants by engaging in a 'knock and talk' investigation and its decision backfired." *Id.* at 692.

¶ 77. "[T]he problem in this case," it explained, "is that the officers and agents lacked a warrant when they approached the home and utilized tactics that, if allowed to go unchecked, would eliminate the Fourth Amendment warrant requirement for a home with any connection to drugs." *Id.* at 691. "If we affirm the district court's decision [that exigent circumstances were present], we have effectively created a situation in which the police have no reason to obtain a warrant when they want to search a home with any type of connections to drugs." *Id.*

¶ 78. The Third Circuit Court of Appeals employed a similar analysis in *United States v. Coles,* 437 F.3d 361 (3d Cir. 2006). There, officers were conducting surveillance on a motel room due to suspected drug activity. After knocking on the door and announcing their presence, they heard the "sounds of rustling and running footsteps," and they attempted to open the door using an electronic passkey. *Id.* at 364. Although the officers' attempt to open the door failed, Coles eventually opened the door and permitted the officers to enter.

¶ 79. In determining whether exigent circumstances were present, the court emphasized that "the officers decided to enter room 511 without a warrant." *Id.* at 370. "It was that decision to conduct a warrantless entry and search of the room, without any urgent need to do so, that impermissibly created the very exigency relied upon by the government in this case." *Id.*

¶ 80. The Third Circuit concluded that the officers could not justify their entry with an exigency that did not exist before officers decided to alert the occupants to their presence:

> We emphasize that the record reveals no urgency or need for the officers to take immediate action, prior to the officers' decision to knock on Coles's hotel room door and demand entry. It is, of course, true that once the officers knocked on the door and announced, "open the door, this is the police," they heard sounds indicating that evidence was being destroyed. But that exigency did not arise naturally or from reasonable police investigative tactics. Quite to the contrary, the officers, after their pretextual announcements had failed to gain entry to room 511, deliberately created the exigency by knocking on the door to room 511 and demanding entry.

*Id.* at 371.

¶ 81. Like these other courts, I conclude that the *MacDonald* analysis, which has not been previously adopted in Wisconsin, does not adequately safeguard Fourth Amendment rights. Because I conclude that the officers did not have probable cause and any exigency that existed when Robinson refused to open the door was created by the police, I determine that the exigent circumstances exception to the warrant requirement does not apply. The warrantless search of Robinson's apartment was unconstitutional, and the evidence seized during this search should be suppressed.

¶ 82. For the reasons stated above, I respectfully dissent.

¶ 83. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.