No. 101,860

STATE OF KANSAS, *Appellee*, v. JAMES E. CAMPBELL, JR., *Appellant*.

(300 P.3d 72)

Opinion filed May 3, 2013.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Bethany C. Fields*, deputy county attorney, argued the cause, and *Kevin W. Martin*, legal intern, *Barry Wilkerson*, county attorney, *Steve Six*, former attorney general, and *Derek Schmidt*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

MORITZ, J.: We granted James Campbell's petition for review to consider whether the Court of Appeals properly affirmed the district court's denial of his motion to suppress. In his direct appeal, Campbell contended that a police officer's warrantless and forced entry into his apartment was not justified by exigent circumstances; thus, the entry and subsequent seizure of evidence in plain view violated Campbell's Fourth Amendment rights. Specifically, Campbell argued the forced entry was unjustified because (1) although the officer claimed he appropriately used force to enter the apartment because Campbell answered the door carrying a gun, Campbell was not carrying a gun and thus no exigency arose; and (2) even if he was carrying a gun, he was legally permitted to do so, and the exigency exception did not apply because the officer created the exigency by covering the peephole of the door and positioning himself to mask his presence. While the Court of Appeals found the evidence substantiated the officer's claim that Campbell carried a gun when he opened the door, threatening the officer's safety, it inexplicably found that Campbell had not argued that the officer created the exigency. Therefore, the panel refused to consider this issue and affirmed the district court's ruling that the plain view exception justified the seizure. *State v. Campbell*, No. 101,860, 2010 WL 2348692 (Kan. App. 2011) (unpublished opinion).

Our review of the record reveals that Campbell clearly argued to the district court and to the Court of Appeals that the police officer's actions created the "exigency," which the officer then used to justify his use of force and warrantless entry to the apartment. Further, we conclude the exigent circumstances exception does not apply in light of the officer's unreasonable actions in creating the exigency.

Because the officer's actions preceding the exigency were unreasonable and in violation of the Fourth Amendment, we reverse both the district court's decision denying Campbell's motion to suppress and the Court of Appeals' decision affirming that decision, and we remand to the district court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged Campbell with one count of possession of marijuana with intent to sell, one count of possession of cocaine, one count of misdemeanor possession of marijuana, two counts of possession of drug paraphernalia, one count of criminal possession of a firearm, and two counts of possession of a controlled substance without a tax stamp. After Campbell moved to suppress the evidence supporting those charges, the district court conducted an evidentiary hearing on the motion. We have summarized below the hearing testimony of Riley County Police Officer Thomas Nible.

Nible testified that the charges arose out of his investigation of a noise complaint regarding a car owned by Campbell. After he located the car in Campbell's apartment parking lot, he decided to speak with Campbell about the complaint. Campbell's apartment was on the third floor, with an exterior, walk-up entrance.

As the officer approached Campbell's apartment, he smelled burning or burnt marijuana and heard at least two male voices coming from an open window in the apartment. Nible wanted to investigate the marijuana smell by looking inside the apartment, but he knew he lacked authority to enter. Instead, in an effort to ensure the occupants would open the door, Nible positioned himself next to the door and covered the peephole with his left hand. Nible described his actions as follows: "I kind of bladed myself sideways with my weapon, kept my weapon away from the door, left side of my body towards the door, I stepped kind of back away from the windows, kept myself out of view, and knocked on the door."

Nible explained that by "blading" himself against the door, he assumed a protective posture, and it "turned out" that it also placed him in a position so he could use his shoulder to force the door open.

Campbell opened the door about a third of the way and looked around it. Nible could only see Campbell's head and face and a silver handgun about waist high. Nible explained that the handgun "wasn't pointed at me in the means that [Campbell was] trying to shoot me at that time and that moment." Rather, it was simply pointed in Nible's general direction. Nible stated Campbell "looked surprised" when he saw Nible and tried to shut the door.

According to Nible, he had been trained to either confront a handgun or retreat to initiate a different plan from a safer position. Nible felt he had no option to retreat toward the stairs because he would have to pass in front of the apartment's window. Concluding he was in an unsafe position regardless of whether he retreated or confronted the handgun, Nible decided to force his way into the residence. Nible's supervisor, who arrived after Nible called for backup, testified that Nible was adamant he saw a weapon. However, his supervisor noted that due to Nible's military training he "thinks things through a little bit differently and [is] maybe a little more assertive or aggressive."

Nible testified he hit the door hard and opened it with two shoves, drawing his weapon as he did so. Once inside, he saw a couch positioned to the right of the doorway and another couch in front of the door. As Nible entered the apartment, Campbell was positioned "partially over" the couch in front of the doorway. Nible surmised that Campbell's location "could be" consistent with the officer knocking Campbell over the couch when he forced open the door.

After securing Campbell, Nible secured the other two men in the room and requested the weapon. All three men denied having a weapon, and Campbell claimed to have had a bandana in his hand, not a weapon. Nible "looked around the general area" but did not see a weapon.

Nible called for backup and explained to the occupants of the apartment that he had been investigating a noise complaint. From Nible's position in the doorway, he had a clear view into the kitchen where he saw a large, glass marijuana bong and a leafy, green substance on the counter.

Once backup arrived, Nible sought Campbell's written permission to search the apartment. Campbell refused to give written permission but did give verbal consent. Nible found a handgun under a cushion in the couch "furthest away from [Campbell], the couch closest by the side of the door."

The State charged Campbell with one count of possession of marijuana with intent to sell, one count of possession of cocaine, one count of misdemeanor possession of marijuana, two counts of possession of drug paraphernalia, one count of criminal possession of a firearm, and two counts of possession of a controlled substance without a tax stamp.

*Motion to Suppress*

Campbell filed a motion to suppress the gun and evidence found in his apartment. Initially, he argued the smell of burning marijuana did not provide exigent circumstances justifying the warrantless entry. See *State v. Huff*, 278 Kan. 214, Syl. ¶ 7, 92 P.3d 604 (2004). Further, Campbell argued the State failed to establish exigent circumstances based on officer safety because the officer admitted that Campbell had attempted to close the apartment door and Campbell disputed he had a gun. Additionally, Campbell argued that even if he did answer the door with a gun, he did not violate any law by doing so. Campbell further asserted that one of the factors used to determine whether exigent circumstances exist—whether the suspect is reasonably believed to be armed—was not met.

In the alternative, Campbell argued that even if the district court found exigent circumstances based on officer safety, the exigent circumstances exception did not apply here because Nible created the safety risk and the exigency by covering the door's peephole and hiding himself from the view of the occupants. He argued that because no other exception to the warrant requirement applied, the officer was not lawfully in the apartment; therefore, any evidence discovered in plain view must be suppressed. Likewise, Campbell argued the gun must be suppressed because the unlawful entry tainted his consent to search.

The district court rejected Campbell's exigency argument, concluding Nible's decision to enter the apartment to neutralize the immediate danger was lawful. Having concluded the officer lawfully entered Campbell's apartment based on exigent circumstances, the district court found that the plain view exception as well as Campbell's consent justified seizure of the items found in the apartment, and the court denied Campbell's motion to suppress.

Following a bench trial, the district court convicted Campbell of all of the charges except misdemeanor marijuana possession and ordered concurrent sentences totaling 37 months' imprisonment.

On direct appeal, a panel of the Court of Appeals affirmed Campbell's conviction and sentence. Although the panel specifically cited the district court's ruling rejecting Campbell's challenge to the entry into his apartment as unjustified based on exigent circumstances, the panel inexplicably held that Campbell had failed to challenge the exigency exception to the district court *and* that the district court had not considered any exigency arguments when ruling on the motion to suppress. And because Campbell had not challenged the district court's plain view determination in his direct appeal, the panel affirmed Campbell's conviction on plain view grounds.

Campbell petitioned this court for review, arguing the Court of Appeals erred in finding he failed to preserve his claim that the officer created the exigent circumstances. This court granted review and has jurisdiction under K.S.A. 20-3018(b) (review of Court of Appeals decision).

## ANALYSIS

In his petition for review, Campbell argues the district court erred in failing to suppress the evidence discovered in his apartment because Officer Nible created the exigent circumstances by positioning himself in the doorway and covering the peephole so as to prevent an occupant of the apartment from seeing who was at the door. Campbell reasons that because Nible unlawfully entered his home, the plain view exception did not apply and Campbell's consent to search was invalid. But we cannot reach that ar-

gument until we consider whether the Court of Appeals correctly held Campbell failed to preserve the argument.

*Preservation*

We can dispose of this issue in short order as the panel simply erred in concluding Campbell did not challenge the existence of exigent circumstances below. In the district court, Campbell argued that the smell of marijuana did not create an exigency and that his appearance at the door with a gun did not create an exigency as Nible admitted Campbell had attempted to close the door. Further, Campbell asserted Nible lacked a reasonable belief that Campbell was armed based on where the gun was discovered. Additionally, Campbell argued that because Nible created the exigency by his actions, the exigency exception to the warrant requirement did not apply.

The panel also clearly erred in finding that the district court did not address the exigency exception. In fact, the district court specifically addressed Campbell's exigency argument, finding: "[T]he Court's ruling will be [Campbell] had the right to neutralize the threat to his safety." Based on this ruling, the district court then discussed the plain view exception and consent, ultimately denying the suppression motion on these grounds.

It appears the panel failed to discern that before the district court could even consider the plain view exception or the validity of Campbell's consent, it first had to find that Nible lawfully entered the residence. Because the district court made that preliminary ruling and Campbell specifically appealed that determination to the Court of Appeals, we conclude the panel erred in finding Campbell failed to raise this issue.

*Standard of review*

" 'The factual underpinnings of a decision on a motion to suppress are reviewed for substantial competent evidence and the ultimate legal conclusion drawn from those facts reviewed de novo.' [Citations omitted.] This court does not reweigh evidence, assess the credibility of witnesses, or resolve conflicts in evidence. [Citation omitted.] It is the State's burden to demonstrate that a challenged seizure or search was lawful, [citations omitted], as long as the defendant had a legitimate expectation of privacy protected by the Fourth Amendment. [Citations omitted.]' " *State v. Johnson*, 293 Kan. 959, 963, 270 P.3d 1135 (2012).

### Police-Created Exigency Doctrine

The Fourth Amendment and § 15 of the Kansas Constitution Bill of Rights prohibit a warrantless and nonconsensual entry into a home absent a recognized exception to the warrant requirement, one of which is the exigent circumstances exception. See *State v. Thomas*, 280 Kan. 526, 530-31, 124 P.3d 49 (2005) (citing *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 [1980]); see also *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010) ("We interpret Section 15 of the Kansas Constitution Bill of Rights to provide the same protection from unlawful government searches and seizures as the Fourth Amendment to the federal constitution."), *cert. denied* 131 S. Ct. 2114 (2011).

An officer can rely on the exigent circumstances exception when the officer has an objectively reasonable belief that an emergency situation exists; one such situation is when an officer's safety is threatened. *State v. Shively*, 268 Kan. 589, 595, 999 P.2d 259 (2000). If an officer can articulate how the presence of a weapon affected the officer's safety, this court has interpreted the Fourth Amendment to allow a warrantless entry into a person's home based upon officer safety concerns. See 268 Kan. 589, Syl. ¶ 4. While Campbell again challenges on appeal the legal sufficiency of the officer's exigency determination, we need not reach that issue because we conclude that even if an exigency occurred, the evidence must be suppressed because Nible acted unreasonably in creating the exigency.

After this court granted Campbell's request for review, the United States Supreme Court addressed the issue of a police-created exigency in *Kentucky v. King*, 563 U.S. 452, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011). Before *King*, numerous federal circuit courts and several state courts carved out an exception to the exigent circumstances exception to the warrant requirement, called the " 'police-created exigency' " doctrine. Courts have developed a variety of tests to determine when to apply the doctrine, and they have generally concluded police may not rely on an exigent circumstance, such as the destruction of evidence, when police conduct " 'created' " or " 'manufactured' " that exigency. 131 S. Ct. at 1857.

In his appeal brief and petition for review, Campbell cites *United States v. Richard*, 994 F.2d 244, 249 (5th Cir. 1993), to support his argument that Officer Nible created the exigency in this case, rendering his entry into Campbell's home unlawful. In *Richard*, the Fifth Circuit Court of Appeals distinguished " 'between cases where exigent circumstances arise naturally during a delay in obtaining a warrant and those where officers have deliberately created the exigent circumstances.' " 994 F.2d at 248. The *Richard* court concluded that when officers deliberately create the exigency, the evidence is inadmissible. The United States Supreme Court, however, adopted a different test in *King*.

There, the police arranged a controlled drug buy outside an apartment complex. After the deal was completed, the officers quickly moved in on the suspect as he walked toward the apartment building's breezeway. As they did so, they heard an apartment door shut, but they could not determine which apartment the suspect had entered. Detecting a strong marijuana odor emanating from the apartment door to the left, the officers approached that apartment and banged on the door "as loud as [they] could," while announcing their identity as police. *King*, 131 S. Ct. at 1863. In response, the officers heard movement inside, which led the officers to believe that the occupants of the apartment were about to destroy drug-related evidence. Consequently, the officers announced their intent to enter the apartment and then kicked in the door. During a protective sweep, the officers saw drugs in plain view. But as it turns out, the officers had focused on the wrong apartment and their suspected drug dealer was later located in the apartment on the right. The state court suppressed the evidence under the police-created exigency doctrine, and the Supreme Court granted certiorari. 131 S. Ct. at 1854-55.

In deciding *King*, the Court assumed for the purposes of argument that the facts demonstrated exigent circumstances, and defined the question before it as: "Under what circumstances do police impermissibly create an exigency?" 131 S. Ct. at 1862-63. An 8-1 majority of the Court held "the exigent circumstances rule applies when the police do not gain entry to premises by means of an actual or threatened violation of the Fourth Amendment." 131

S. Ct. at 1862; see *United States v. Hendrix*, 664 F.3d 1334 (10th Cir. 2011) (applying *King* to uphold a warrantless motel entry because officers did not violate Fourth Amendment).

Relying on well-established Fourth Amendment jurisprudence, the Supreme Court in *King* rejected tests that relied on the subjective intent of the officer, whether the tactics created a reasonably foreseeable exigency, and whether the conduct would lead a person to believe that entry was imminent.

In a more detailed holding the Court stated:

"Despite the welter of tests devised by the lower courts, the answer to the question presented in this case follows directly and clearly from the principle that permits warrantless searches in the first place. As previously noted, warrantless searches are allowed when the circumstances make it reasonable, within the meaning of the Fourth Amendment, to dispense with the warrant requirement. Therefore, the answer to the question before us is that the exigent circumstances rule justifies a warrantless search when the conduct of the police preceding the exigency is reasonable in the same sense. Where, as here, the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed." 131 S. Ct. at 1857-58.

Notably, in adopting a test that considers whether officers' actions preceding the exigency were reasonable, and thus whether the Fourth Amendment was violated, the Supreme Court reiterated that officers conducting a "knock and talk" are "encouraged" to identify themselves, as in many circumstances their presence will be reassuring rather than discomforting. 131 S. Ct. at 1861. The Court further noted that occupants "may appreciate the opportunity to make an informed decision about whether to answer the door." 131 S. Ct. at 1861. Ultimately, the Court rejected the defendant's argument that the officers' actions were unreasonable.

In contrast to the officers in *King*, the officer here did not mistakenly approach the defendant's apartment door. Nor did the officer here announce his presence or give the occupants any opportunity to make an "informed" decision whether to open the door. See 131 S. Ct. at 1861. In considering the circumstances of this case, we are mindful that the Fourth Amendment permits knock and talk encounters because they are voluntary consensual encounters. See Annot., 15 A.L.R.6th 515 (stating that a knock and

talk is a legitimate tactic used by officers lacking reasonable suspicion, and the Fourth Amendment is not implicated simply because "a police officer, just as any other citizen, is free to walk up to the door of a home and a knock on the door").

Recently, in discussing whether a dog sniff at the front door of the defendant's home was consistent with the Fourth Amendment, the United States Supreme Court commented on the scope of an officer's permissible actions when approaching a front door, stating, " '[t]he knocker on the front door is treated as an invitation or license to attempt an entry.' " *Florida v. Jardines*, 569 U.S. ____, 133 S. Ct. 1409, 1415, 185 L. Ed. 2d 495 (2013). The invitation or license extended to "solicitors, hawkers and peddlers" also extends to law enforcement officers, who are accordingly permitted to do as any " 'private citizen might do.' " 133 S. Ct. at 1415-16 (affirming that the invitation permits a visitor to approach, knock promptly, wait briefly, and then if not invited to stay, leave).

Here, Officer Nible did more than "any private citizen might do." See *King*, 131 S. Ct. at 1862. Rather than simply knock on the door and wait for an answer, Nible affirmatively chose to conceal his identify by covering the peephole and positioning himself to block the occupant's ability to determine who was standing at the door—essentially forcing the occupant of the apartment to make an *uninformed* decision. "No customary invitation" permits approaching someone's door in this manner. *Jardines*, 133 S. Ct. at 1416. Pursuant to *King*, because Nible acted unreasonably by exceeding the scope of a knock and talk, he engaged in conduct that violated the Fourth Amendment and cannot rely on the exigency exception to justify his warrantless entry.

The State suggested at oral argument that Nible acted reasonably because a process server, bondsperson, or practical joker might take the same action as the officer. But these are not examples of what a private citizen might do in approaching another's home. See *King*, 131 S. Ct. at 1862. As our United States Supreme Court recently recognized, it "does not require fine-grained legal knowledge" to understand the bounds of the invitation that enables an officer to knock on a citizen's door. Rather, "it is generally managed without incident by the Nation's Girl Scouts and trick-or-

treaters." See *Jardines*, 133 S. Ct. at 1415. By acting beyond what a private citizen might do, Nible unreasonably created the exigency leading to his entry.

And while the dissent cites two cases in support of its suggestion that Officer Nible acted in an acceptable and customary fashion in covering the peephole and hiding himself from the view of the occupants of the home, neither of the cited cases actually support that proposition. See *State v. Robinson*, 327 Wis. 2d 302, 786 N.W.2d 463 (2010) (defendant alleged officer covered peephole but lower court adopted officer's testimony that peephole was not covered; appellate court accepted that factual finding and so did not address defendant's allegation); see also *United States v. Ramirez*, 676 F.3d 755, 762 (8th Cir. 2012) (court acknowledged that officer covered the peephole but did not find such action appropriate, instead focusing on officer's clear Fourth Amendment violation in attempting to open a hotel room door with a key card).

Additionally, as Campbell points out, the Kansas Legislature has clearly authorized citizens to use force in defense of their homes. See, *e.g.*, K.S.A. 2012 Supp. 21-5223(a) (creating a defense to criminal charges when a person justifiably uses appropriate force to protect the person's dwelling). Similarly, our state constitution now provides: "A person has the right to keep and bear arms for the defense of self, family, home, and state." Kan. Const. Bill of Rights § 4. Given this history, we simply cannot accept the State's position that an officer can rely on evidence seized after an officer conducting a voluntary "knock and talk" breaks down the door of a residence after an occupant appears at the door of a home carrying a gun, when the officer's intrusion into the home has been preceded by the officer (1) positioning himself against the door of the residence so as not to be seen by the occupants; and (2) covering the door's peephole to prevent the occupant from discerning the officer's identity in an affirmative attempt to entice the occupants to open the door.

Before closing, we pause to note that assuming an officer safety exigency existed, Nible properly relied on his training to protect himself. In that respect, his entry cannot be faulted. But he is not entitled to take advantage of his unreasonable behavior in creating

the exigency by using that entry to gain evidence he otherwise would not have gathered. In short, while we do not fault Nible for protecting his safety, the Fourth Amendment does not permit him to rely on evidence he seized only because he acted unreasonably, exceeding the scope of a knock and talk.

Because the officer's conduct preceding the exigency was unreasonable, the officer violated the Fourth Amendment and therefore could not rely upon the exigent circumstances exception to justify his warrantless entry into Campbell's apartment. The officer's unlawful entry tainted the evidence seized, requiring that we reverse the district court's decision denying Campbell's motion to suppress and the Court of Appeals' decision affirming the district court, and we remand to the district court for further proceedings.

Reversed and remanded.

\* \* \*

BILES, J., dissenting: I agree the United States Supreme Court's decision in *Kentucky v. King*, 563 U.S. 452, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011), establishes the test for determining whether the police-created exigency doctrine applies. But I would hold that doctrine does not apply in this case because the officer did not violate or threaten to violate the Fourth Amendment by covering over the peephole and hiding himself from view before knocking on Campbell's door. I would affirm the district court's holding that the officer's concern for his own safety permitted the warrantless home entry.

Fourth Amendment jurisprudence has long recognized that law enforcement is permitted to approach a suspect's home and knock on the front door in hopes that the occupant will answer and submit to a voluntary encounter. See, *e.g.*, *King*, 131 S. Ct. at 1862. The majority concedes this point. Thus, the officer did not violate or threaten to violate the Fourth Amendment by approaching Campbell's apartment door and knocking on it. The question is whether a valid "knock and talk" became an impermissible violation of the Fourth Amendment when the officer covered the peephole and hid from view. I would hold that this is not a violation or threatened violation of the Fourth Amendment.

The Wisconsin Supreme Court decided a very similar question in *State v. Robinson*, 327 Wis. 2d 302, 786 N.W.2d 463 (2010). There, an officer approached a home, covered the door's peephole, knocked on the door, and announced that he was a law enforcement officer. After making that announcement, he heard footsteps running. Fearing that evidence would be destroyed, the officer kicked in the door based on that exigent circumstance. The defendant argued the officer created the exigency. The *Robinson* court held that the police-created exigency doctrine *only* applies if the officer violates the law while creating the exigency. It held further that the officer did not violate the law and upheld the officer's warrantless home entry based on the exigent circumstances exception to the warrant requirement. 327 Wis. 2d at 326-27. The one distinction between the facts in *Robinson* and what happened at Campbell's front door is that the officer in *Robinson* announced he was a law enforcement officer. I believe this is a distinction without a difference.

The majority relies heavily on *Florida v. Jardines*, 569 U.S. \_\_, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013). But the *Jardines* Court addressed only whether "using a drug-sniffing dog on a homeowner's porch to investigate the contents of the home is a 'search' within the meaning of the Fourth Amendment." 133 S. Ct. at 1414-15. The *Jardines* Court held that a home's front porch is part of the home's curtilage that is protected by the Fourth Amendment. 133 S. Ct. at 1414-15. And the Court concluded that bringing a drug-sniffing dog onto a home's front porch was an objectively unreasonable search that exceeded the scope of what the officer had license to do. 133 S. Ct. at 1416. But the *Jardines* Court does not apply *King*, and it does not support a conclusion that covering a peephole violates the Fourth Amendment.

Covering a door's peephole is a ruse law enforcement officers have used before. See *United States v. Ramirez*, 676 F.3d 755, 758 (8th Cir. 2012) (officer covered hotel door's peephole and said "housekeeping" to get occupant to open door). In *State v. Johnson*, 253 Kan. 356, 364-65, 856 P.2d 134 (1993), this court summarized numerous cases in which a law enforcement ruse to gain entry into a home was held not to violate the Fourth Amendment, stating:

"Ruse entries have been upheld in *United States v. Turpin*, 707 F.2d 332 (8th Cir. 1983) (police told defendant he was not a suspect in a homicide investigation when in fact police considered defendant a suspect); *United States v. Wright*, 641 F.2d 602 (8th Cir.), *cert. denied* 451 U.S. 1021 (1981) (pretending to have car problems, government agents knocked on suspect's motel room door and asked to borrow tools; when suspect opened the door, agents could see white powdery substance and drug paraphernalia inside); *Guidry v. State*, 671 P.2d 1277 (Alaska 1983) (officers who sought to verify license number of defendant's truck and to obtain a description of the property for later use in obtaining a search warrant posed as prospective house buyers; defendant invited the officers into the home, where they gained information used to obtain a search warrant); *People v. Ewen*, 194 Ill. App. 3d 404, 551 N.E.2d 426, *cert. denied* 498 U.S. 854 (1990) (police told defendant they were investigating a complaint about a letter he received that included an order form for child pornography; police had initiated the letter); *Com. v. Morrison*, 275 Pa. Super. 454, 418 A.2d 1378 (1980), *cert. denied* 449 U.S. 1080 (1981) (officer misrepresented his identity and purpose in wishing to view the interior of the defendant's barn). Deception is but one factor in examining the totality of the circumstances. See 1 Ringel, Searches & Seizures, Arrests and Confessions § 9.3(b)(5) (2d ed. 1993)."

Similarly, I would hold that simply covering the peephole in the hope that Campbell would open the apartment door did not violate the Fourth Amendment. The majority cites no case directly on point to support its conclusion. I would affirm the district court and the Court of Appeals. The majority has set a precedent for the court that it will find difficult to live with in future Fourth Amendment cases.