NOT DESIGNATED FOR PUBLICATION

No. 121,126

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DERON MCCOY JR.,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed November 13, 2020. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant, and *Deron McCoy Jr.*, appellant pro se.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL and ATCHESON, JJ.

ARNOLD-BURGER, C.J.: Deron McCoy Jr. appeals from the trial court's denial of his K.S.A. 2019 Supp. 60-1507 motion, raising multiple claims of ineffective assistance of trial and appellate counsel. McCoy now raises four of those ineffective assistance claims, specifically those related to his trial counsel's failure to (1) argue the police created exigent circumstances by trying to enter his hotel room with a key card, violating the Fourth Amendment to the United States Constitution; (2) preserve the denial of a motion to suppress for appeal; and (3) contest the unavailability of a witness; as well as (4) his appellate counsel's failure to challenge the sufficiency of the evidence for one of

1

his convictions. He also asserts the cumulative effect of those errors deprived him of his Sixth Amendment to the United States Constitution right to counsel. After a thorough review of the motion, files, and records of the case, we find no error in the court's decision and affirm.

FACTUAL AND PROCEDURAL HISTORY

The underlying facts of this case were set forth in McCoy's previous appeal, but generally involved an incident in which McCoy held his infant daughter, A.M., and his sister, Kaneisha Spencer, at gunpoint during an hours-long standoff with the police. See *State v. McCoy*, No. 110,827, 2015 WL 3632037, at *1-3 (Kan. App. 2015) (unpublished opinion), *rev. denied* 304 Kan. 1020 (2016). Ultimately, a jury convicted McCoy of one count of kidnapping of Spencer, five counts of aggravated assault on a law enforcement officer, one count of aggravated assault of Spencer, one count of aggravated endangerment of a child, one count of criminal possession of a firearm, one count of possession of cocaine, one count of solicitation to commit perjury, and one count of possession of hydrocodone-lortab. Relevant to this appeal, the jury also acquitted McCoy of two counts of possession of drug paraphernalia and one count of possession of methamphetamine, based on evidence that the officers seized from the hotel room and his person after his arrest. The court later sentenced McCoy to a total prison sentence of 335 months.

McCoy filed a direct appeal, raising several trial errors. A panel of this court rejected most of his arguments and affirmed his convictions, but still vacated his sentence and remanded for a new hearing on his motion for new trial. On that point, the panel found the trial court erred by denying his clear and unequivocal request for self-representation. See 2015 WL 3632037, at *22-23. The mandate for the direct appeal issued May 4, 2016.

2

On remand, the trial court held a hearing on McCoy's motion for new trial. Representing himself, McCoy argued newly discovered evidence supported his request for a new trial, specifically that Spencer would testify he did not hold her against her will and she was generally unaware of the criminal charges. After hearing testimony from Spencer, at the close of the hearing the court granted the parties leave to submit briefs and took the matter under advisement.

Ultimately, the trial court denied the motion for new trial at a hearing in October 2016, finding that McCoy had failed to establish he could not have produced Spencer as a witness with reasonable diligence before trial. The court also found Spencer's testimony was not credible, and that even if presented at trial it would be unlikely to change the outcome. The court went on to resentence McCoy to the same sentence as before—a controlling sentence of 335 months in prison. McCoy timely appealed, challenging the denial of his motion for new trial. This court ultimately affirmed the trial court's ruling on the remanded motion for new trial in McCoy's second appeal. See *State v. McCoy*, No. 117,480, 2018 WL 2072452, at *1 (Kan. App. 2018) (unpublished opinion), *rev. denied* 309 Kan. 1352 (2019).

*McCoy files a K.S.A. 2019 Supp. 60-1507 motion.*

McCoy timely filed a pro se K.S.A. 2019 Supp. 60-1507 motion, alleging ineffective assistance of both trial and appellate counsel in his first appeal. He raised 11 total claims in the motion. The trial court held a hearing on the motion, at which McCoy, his trial counsel, and his appellate counsel testified. Because he only raises five of those claims on appeal, we will focus on the evidence presented and the trial court's decision on those five. McCoy challenged his trial counsel's alleged failure to (1) argue a Fourth Amendment violation based on alleged police-created exigent circumstances for using a hotel key card to enter the hotel room; (2) preserve the denial of the motion to suppress for appeal by not objecting to an officer's testimony at trial; and (3) contest Spencer's

unavailability, which allowed the admission of her hearsay statements at trial; as well as (4) his appellate counsel's alleged failure to challenge the sufficiency of the evidence to support one count of aggravated assault on a law enforcement officer; and (5) whether the cumulative effect of those errors, if any, deprived him of his Sixth Amendment right to counsel.

*McCoy's testimony*

McCoy testified that he believed the officers had no evidence, only "suspicions" to support attempting to enter the hotel room with a key card. That attempt then created the exigent circumstances the officers would later rely on to forcibly enter the room. McCoy believed his trial attorney, Alice Osburn, provided ineffective assistance by failing to object to testimony at trial, thus not preserving that issue for appeal.

McCoy also testified that the State failed to proffer evidence to show a witness was unavailable to testify, "[a]nd in my case Mr. Stanton [the prosecutor] just stood up and during trial, like halfway through the testimony one day, said he was proffering the hearsay testimony of my sister under a cited evidence exception." The hearsay statements were that Spencer "had allegedly told [the officers] that I was holding her in the hotel room, had a gun on her, wouldn't let her out, and made her turn off her cell phone." McCoy never got the chance to cross-examine Spencer because she was not present at the preliminary hearing or the trial. McCoy later filed a motion for new trial upon remand after Spencer "got in contact with [him] and was at first didn't believe that [he] was in prison and convicted of crimes against her 'cause she said she never alleged any crimes against me."

McCoy testified his appellate counsel on his first appeal, Rachel Pickering, was ineffective for failing to challenge the sufficiency of evidence to support the crime of aggravated assault of a law enforcement officer against Officer Brian Hirt. McCoy

4

pointed out that Officer Hirt was not in the hotel room and there was no weapon pointed at him, and "[s]he told me she was going to raise the issue and she didn't raise it, so obvious issue."

*Trial counsel testimony*

Osburn testified as well. As for the exigent circumstances argument, Osburn testified about her recollection of the events leading to the officers' entry into the hotel room. She did not recall if the officers used the key the first time or the second time, but she knew that they tried to enter once and backed out because McCoy had threatened to hurt someone and said to "get the fuck out." Osburn said the officers knew various details before that first entry based on what the mother of the baby had told the police, including "the area of where he would have been in, who he would have been with, that a minor child was involved, that there was threats of violence, and that there was a gun involved."

Osburn testified that "[a]pparently" she did not object to the very first witness testimony. She recalled that McCoy was actively engaged in the trial, talking to her and writing notes. Osburn recalled the State seeking to admit Spencer's hearsay statements and that the court ruled her statements made as she left the hotel room were excited utterances, a hearsay exception. Because of that determination, Osburn believed she did not need to argue the unavailability of the witness.

Osburn recalled there was evidence seized from the room and McCoy's person relating to the controlled substances charges. She remembered that there was a glass pipe found in the room and a scale in the bathroom ceiling. The State charged McCoy with possession of drug paraphernalia, but the jury acquitted him of those charges. Osburn had moved to suppress the items found in the hotel room.

5

On cross-examination, Osburn testified she did not file a motion arguing that the State created the exigent circumstances by trying to enter the hotel room with a key card because she "didn't think the [S]tate created the situation, the defendant actually did." Osburn also did not raise the issue that McCoy would be unable to confront Spencer if the State introduced her statements without her being present. She reiterated her understanding that the State did not need to prove unavailability because the statements fell under a hearsay exception but agreed there was no evidence presented to establish Spencer's unavailability.

*Appellate counsel testimony*

Pickering then testified. She recalled filing a brief on McCoy's behalf raising nine total issues. There were no reasons for her to raise the unavailability issue on appeal because the statements were admitted as an exception to hearsay.

Pickering recalled arguing that McCoy's convictions for aggravated assault on a law enforcement officer were multiplicitious and violated double jeopardy. The appellate court found the convictions were not multiplicitious and that they should stand. When asked if she challenged the sufficiency of the evidence to support the convictions, Pickering said, "[w]hen you're attacking the multiplicity you're usually attacking the, in a sense the sufficiency. . . . Because if there is sufficient evidence, they're finding all five."

Pickering argued the trial court erred in denying McCoy's motion to suppress the evidence found in the hotel room. The Court of Appeals did not reach the issue but ultimately found the issue was moot because McCoy had been acquitted of the drug paraphernalia charges based on the search.

On cross-examination, Pickering testified she did not raise a constitutional argument that Spencer's statements should not come in because McCoy did not have the

6

right to confront Spencer. Pickering did not argue on appeal that the State failed to provide sufficient evidence that Spencer was unavailable. Pickering did not argue that there was insufficient evidence to support a conviction for aggravated assault against Officer Hirt. On redirect, Pickering confirmed that she raised all the issues in the petition for review that were raised on direct appeal, except for the one argument that was successful.

*Trial court's ruling*

Ultimately, the court denied the 60-1507 motion, concluding that McCoy had showed no level of ineffective assistance for any of his claims, excepting the claim that his trial counsel was ineffective for failing to object at trial to the admission of certain evidence. On that claim, however, the court determined McCoy had failed to establish prejudice because the evidence was overwhelming. The court also said that even if Osburn had objected, the issue would have merely been preserved for appeal but that the ruling was still correct. The trial court issued written findings of fact and conclusions of law supporting its decision on each issue raised. More details will be provided as needed as we examine each of those issues.

McCoy timely appealed.

ANALYSIS

McCoy argues the district court erred in denying his 60-1507 motion and that he is entitled to a reversal of the denial of a motion suppress, reversal of his convictions, or—at a minimum—he should receive a new trial based on the claims asserted.

In support, he brings forward four specific allegations of ineffective assistance on appeal, three related to trial counsel performance and one to his appellate counsel's

performance. Then, McCoy's pro se supplemental brief also argues that the cumulative effect of his trial and appellate counsels' failures denied him the right to effective assistance.

McCoy challenges his trial counsel's alleged failure to (1) argue a Fourth Amendment violation based on alleged police-created exigent circumstances for using a hotel key card to enter the hotel room; (2) preserve the denial of the motion to suppress for appeal by not objecting to an officer's testimony at trial; and (3) contest Spencer's unavailability, which allowed the admission of her hearsay statements at trial; as well as (4) his appellate counsel's alleged failure to challenge the sufficiency of the evidence to support one count of aggravated assault on a law enforcement officer; and (5) whether the cumulative effect of those errors, if any, deprived him of his Sixth Amendment right to counsel.

*Standard of review*

When a trial court holds a full evidentiary hearing on a K.S.A. 2019 Supp. 60-1507 motion, it must issue findings of fact and conclusions of law on all issues presented. Supreme Court Rule 183(j) (2020 Kan. S. Ct. R. 223). When that occurs, this court must determine whether the trial court's findings of fact are supported by substantial competent evidence and are sufficient to support the court's ultimate conclusions of law. Appellate review of the court's legal conclusions is de novo. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

*Ineffective assistance of counsel claims, in general*

To be entitled to relief under K.S.A. 2019 Supp. 60-1507(b), the movant must establish by a preponderance of the evidence either: (1) "the judgment was rendered without jurisdiction"; (2) "the sentence imposed was not authorized by law or is

8

otherwise open to collateral attack"; or (3) "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." See Supreme Court Rule 183(g).

A defendant may not use a K.S.A. 2019 Supp. 60-1507 motion as a substitute for a direct or second appeal. "Mere trial errors must be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided exceptional circumstances excuse the failure to appeal." Supreme Court Rule 183(c)(3) (2020 Kan. S. Ct. R. 223-24). Ineffective assistance of counsel can qualify as an exceptional circumstance that justifies failing to raise an issue on direct appeal. *Rowland v. State*, 289 Kan. 1076, 1087, 219 P.3d 1212 (2009).

"To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267, 104 S. Ct. 3562, 82 L. Ed. 2d 864 [1984])." *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. In considering deficiency, "there is a strong presumption counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

9

*Trial counsel did not provide ineffective assistance by failing to argue that the police created the exigent circumstances that ultimately lead to them entering McCoy's hotel room.*

On this point, McCoy focuses on the fact that the police tried to enter the hotel room using a key card near the beginning of the standoff, asserting that the police lacked supporting facts to justify a warrantless entry at the time. He claims the officers only suspected he was in the room, may have had a firearm, and that there might be a child inside. The trial court found that McCoy had failed to establish "any level of ineffective assistance" because the evidence "clearly established" that McCoy—and not the police—created the exigent circumstances. In deciding the issue this way, the trial court essentially found that McCoy was not prejudiced when Osburn failed to make this argument because it would not have succeeded. So, we examine the facts supporting McCoy's argument regarding suppression.

McCoy contends that the police created an exigency by using a hotel key card to enter the hotel room without a search warrant or supporting facts to justify a warrantless entry. See *State v. Campbell*, 297 Kan. 273, 283-84, 300 P.3d 72 (2013) (citing *Kentucky v. King*, 563 U.S. 452, 131 S. Ct. 1849, 179 L. Ed. 2d 865 [2011]) (recognizing that a police-created exigency cannot justify a warrantless entry). As support, McCoy also references *United States v. Ramirez*, 676 F.3d 755 (8th Cir. 2012), in which he asserts the Eighth Circuit held that "the attempted entry into a hotel room with a key-card . . . violated the Fourth Amendment and ordered all evidence seized after that violation of the Fourth Amendment be suppressed." Because the facts are sufficiently similar here, McCoy contends that the trial court should have suppressed the evidence seized as a result of the officers' initial unlawful entry. This argument is not persuasive for a few reasons.

10

First, and most importantly, McCoy ignores the evidence detailing everything before the officers first tried to enter the hotel room. According to Leanna Daniels, A.M.'s mother, the incident started during a phone call with McCoy after she heard A.M. crying in the background. Daniels asked why she was crying, and McCoy said to come to the hotel to find out. This alarmed her. Daniels and her friend Gwendolyn Roby then went to the hotel to pick up A.M. Once they arrived, Daniels said McCoy told her to come inside the room, but she refused, so he grabbed her by the hair to pull her in. McCoy then said, "'Sis, come beat this bitch's ass,'" referring to Spencer, who was also in the room. Daniels somehow got away from McCoy and got into her car. She parked behind McCoy's vehicle so he could not drive away with A.M., which prompted McCoy to flash a gun at her. While this was happening, Roby decided to call the police because McCoy would not allow Daniels to take A.M. They also informed the police that McCoy had a gun. Dispatch told them to drive to the police station, which they did.

The police received the dispatch to the hotel around 4:38 p.m., based on Roby's 911 call describing a custody dispute involving McCoy and that he possibly had a gun. Upon arrival, they announced themselves as police officers, knocked on the door, and sought to contact the occupants but McCoy told them to "'get back, stay away.'" At one point, the officers tried to use a hotel key card to enter the room but did not succeed. Some officers testified that McCoy specifically screamed to "'[g]et the fuck back'" after this unsuccessful attempt and then again multiple times after being asked to come out.

Based on these facts, McCoy's claim that the police created the exigent circumstances is simply not supported by the evidence. As a result, the trial court correctly concluded that McCoy created the exigent circumstances through his actions and that the motion to suppress was correctly denied based on that legal ground.

Second, the primary case McCoy relies on for support is distinguishable from his claim. Aside from being nonbinding authority from the Eighth Circuit, the *Ramirez* court

11

declined to say whether the police created the exigency because it found that *no* exigency existed. 676 F.3d at 765 ("[T]he government fails to establish that it was reasonable for the officers to conclude that destruction of evidence was imminent."). Although the panel in McCoy's previous appeal did not review the motion to suppress because it found he had failed to preserve the issue, it still recognized that the trial court determined "there was 'legal cause to go into the room *to protect the safety of the child and the other victim*.'" (Emphasis added.) *McCoy*, 2015 WL 3632037, at *7. As the panel inferred, and as discussed below, that ruling by the trial court was correct.

In sum, McCoy fails to show that Osburn rendered ineffective assistance by failing to argue that the police created the exigency in this case. It was a losing argument. Before the officers' initial unsuccessful attempt at using the hotel key card, an exigency already existed because McCoy was refusing to hand over A.M. to Daniels, possibly had a gun, and was yelling at the officers and refusing to comply with their requests. The trial court correctly denied this ineffective assistance claim.

*Trial counsel provided ineffective assistance by failing to object at trial to evidence recovered during the entry into McCoy's hotel room, but he was not prejudiced by counsel's performance.*

As the panel in McCoy's first appeal recognized, he waived the ability to challenge the denial of the suppression motion because Osburn failed to object properly at trial, which he now asserts amounted to ineffective assistance. See 2015 WL 3632037, at *8. The Court of Appeals found—and the parties do not dispute—that Osburn's failure to object to Officer Josh Long's testimony amounted to deficient performance. As a result, this court will presume Osburn's performance was deficient and move straight to determining whether McCoy was prejudiced by that deficient performance.

12

When testifying at the 60-1507 hearing, Osburn admitted she did not object to Officer Long's testimony. Still, the record reflects she objected each time a subsequent officer testified about the same facts and the trial judge overruled each objection. Given the trial court's consistency in overruling those objections, this court can presume a timely objection to Officer Long's testimony would not have led to a different outcome. Officer Long would still have testified and there is no reasonable probability that the jury would have returned a different verdict. So McCoy must be able to show that this court would have reversed the denial of the suppression motion on appeal.

When ruling on this claim, the trial court noted that "[t]he evidence was, to say the least, overwhelming," and that making the objection would have only preserved the issue for appeal, where there was "no probability" of success. We agree.

To start, as already discussed above, substantial competent evidence supports the trial court's findings and conclusion that McCoy created the exigent circumstances that allowed the officers to enter his hotel room without a warrant. This was true before their initial unsuccessful attempt and bolstered by the hours-long standoff that began when the officers backed away. During the standoff, the officers were monitoring sound or movement in the room and noticed A.M. would cry every time a train passed by the hotel. When two trains passed by with no sound or movement in the room, which one officer described as "deathly quiet," they decided to force entry around 9 p.m.

McCoy asserts the State could not establish the emergency aid exception justified a warrantless entry and that the primary case relied on to reach that conclusion, *State v. Jones*, 24 Kan. App. 2d 405, 947 P.2d 1030 (1997), has since been overruled. Indeed, the Kansas Supreme Court explicitly overruled the test adopted in *Jones* in 2014, based mainly on the United States Supreme Court decision in *Brigham City v. Stuart*, 547 U.S. 398, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006). See *State v. Neighbors*, 299 Kan. 234,

13

245-49, 328 P.3d 1081 (2014) (discussing the emergency aid exception). Our Supreme Court then held:

> "Accordingly, the emergency aid exception must be seen as a limited exception permitting a warrantless search when: (1) law enforcement officers enter the premises with an objectively reasonable basis to believe someone inside is seriously injured or imminently threatened with serious injury; and (2) the manner and scope of any ensuing search once inside the premises is reasonable." 299 Kan. at 249.

The only aspect of this test that McCoy disputes is whether the officers had an objectively reasonable basis to believe an imminent threat of serious injury existed for someone inside the hotel room. He claims that the allegations by Daniels could not support this prong because the jury acquitted him of the aggravated assault charge against her. But that argument misses the point because Daniels was not in the hotel room with McCoy during the standoff. Based on Daniels' statements, the officers knew or had reason to believe McCoy had a gun and was refusing to let A.M. leave with Daniels when they arrived. Then, he escalated the situation by threatening the officers to "'get the fuck back.'" The officers believed it was an ongoing hostage situation and became concerned because of the lack of movement or noise coming from the room. Thus, the trial court's conclusion that the emergency aid exception applied was supported by the evidence.

McCoy also contends the officers lacked probable cause to enter the hotel room, but, as the State points out, McCoy had threatened Daniels and tried to pull her into the room before the officers arrived. He had also refused to comply with the officers' requests and was committing multiple criminal acts during the standoff by holding Spencer and A.M. hostage in the hotel room. A reasonable person could accept these facts as a basis for probable cause to enter the hotel room.

McCoy's current counsel also briefly suggests that not objecting to Officer Long's testimony meant there was insufficient evidence to sustain all of his convictions,

14

particularly the five counts of aggravated assault on a law enforcement officer, the kidnapping and aggravated assault charges related to Spencer, the aggravated endangerment of a child charge, and the criminal possession of a firearm charge. Yet as the trial court recognized when ruling on McCoy's 60-1507 motion, a timely objection would have only preserved the issue for appeal and allowed review of the motion to suppress. Simply put, even ignoring Officer Long's testimony, there was still overwhelming evidence presented to sustain McCoy's convictions. And as discussed below, McCoy has essentially already raised a sufficiency argument for the charges for aggravated assault on a law enforcement officer by challenging multiplicity in his first appeal. See *McCoy*, 2015 WL 3632037, at *17.

In short, McCoy fails to show that an appellate court would have reversed the trial court's decision to deny the suppression motion. As a result, the trial court correctly denied McCoy's ineffective assistance claim based on Osburn's failure to preserve that issue for appeal.

*Trial counsel did not provide ineffective assistance by failing to contest the unavailability of a witness.*

During the trial, officers testified that they heard Spencer yell "'don't shoot'" after they entered the hotel room. Then while they were apprehending McCoy and escorting Spencer from the room, an officer positioned 52 yards away from the room heard Spencer yell "'he had a gun to my head.'" Spencer also told an officer that McCoy had made her turn off her cellphone, he would not allow her to yell or acknowledge the officers' presence outside, and that he held the gun on her and the baby. Osburn objected to each of these statements as inadmissible hearsay. The State advised the court that a material witness warrant had been issued for Spencer but that she was unable to be located. Ultimately, the court ruled the statements were not testimonial since Spencer was

15

not responding to questioning by law enforcement and ruled them admissible under K.S.A. 2019 Supp. 60-460(d).

McCoy claims he was deprived of his right to confront an opposing witness because the State did not prove Spencer was unavailable. This is essentially the same argument he made on direct appeal that those same statements were testimonial hearsay and did not fall under the excited utterance exception, except that McCoy is now raising it in the context of an ineffective assistance of trial counsel claim for failing to contest Spencer's unavailability. Even though that framing of the issue means this court's decision in his direct appeal does not have res judicata effect, McCoy has still failed to show that his trial counsel was ineffective for failing to contest Spencer's unavailability.

When reviewing McCoy's ineffective assistance claim, the trial court found it had correctly decided the issue related to Spencer's statements as officers escorted her from the hotel room. In the order of denial, the court also determined that "there was no ground upon which Ms. Osburn could have argued that the State was required to show the unavailability of [Spencer]." Finally, the court again noted that the evidence in the case was overwhelming and that the verdict would not have been different had the court excluded Spencer's statements.

On this point, McCoy generally reargues that the hearsay exception did not apply and that the Kansas and United States Constitutions both required the availability of a declarant to be proven before the hearsay statements could be admitted. See *State v. Bratt*, 250 Kan. 264, 270, 824 P.2d 983 (1992) (holding that Confrontation Clause of the Sixth Amendment requires prosecution to either produce or prove unavailability of a declarant before hearsay statements can be admitted). These arguments are unpersuasive because the Kansas Supreme Court has since clarified the relevant law.

16

Relying on *Davis v. Washington,* 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006), the Kansas Supreme Court held that "the test to determine whether the admission of a hearsay statement violates a defendant's rights under the Confrontation Clause *turns on whether the statement is testimonial*." (Emphasis added.) *State v. Davis*, 283 Kan. 569, 575, 158 P.3d 317 (2006) (overruling *Bratt*). The Kansas Supreme Court has also explicitly held that "K.S.A. 60-460(d)(2) does not require that the declarant be unavailable." *State v. Hughes*, 286 Kan. 1010, 1020, 191 P.3d 268 (2008). This court is duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Kansas Supreme Court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017).

So to prevail on his ineffective assistance claim, McCoy needed to establish (1) that Spencer's statements were testimonial or, if not, (2) that the excited utterance hearsay exception did not apply. When determining whether Spencer's statements were testimonial on direct appeal, this court applied the multifactor test from *State v. Brown*, 285 Kan. 261, 291, 173 P.3d 612 (2007), that has since been abrogated. See *State v. Williams*, 306 Kan. 175, 197, 392 P.3d 1267 (2017) (disapproving a purely mechanical application of the *Brown* factors). In *Williams*, the Kansas Supreme Court said, "the *Brown* test was a creature of its time" and instead "the inquiry should generally seek to identify statements that are by nature substituting for trial testimony." *Williams*, 306 Kan. at 197.

The circumstances in which Spencer made these statements clearly support a conclusion that the statements were not testimonial because they were not made in response to any sort of questioning. See *Brown*, 285 Kan. at 291 (discussing third factor of whether the "primary purpose of the interview" was to obtain "proof of facts potentially relevant to a later prosecution of a crime"). Spencer was speaking voluntarily about the distressful situation which she was still fleeing, and which was currently ongoing. Since the statements were not testimonial, the State did not need to prove that

17

Spencer was unavailable in order to admit her statements under an exception to the hearsay rule.

Thus, the only remaining argument McCoy can make on this issue is that none of the hearsay exceptions applied. The trial court determined Spencer's statements were excited utterances under K.S.A. 2019 Supp. 60-460(d), defined as "[a] statement which the judge finds was made . . . (2) while the declarant was under the stress of a nervous excitement caused by such perception." McCoy does not argue that the hearsay exception did not apply to Spencer's statements. Spencer made these statements during and just after being freed from a hostage situation. She was still under the stress of the encounter when she uttered the statements. As a result, the trial court correctly concluded that the statements were excited utterances, and thus that McCoy has failed to show ineffective assistance of trial counsel on this claim.

*Appellate counsel did not provide ineffective assistance by failing to challenge the sufficiency of the evidence to support aggravated assault on a law enforcement officer against Officer Hirt.*

McCoy argues Pickering, his direct appellate counsel, provided ineffective assistance when she failed to argue in his direct appeal that one of his convictions was not supported by sufficient evidence. He specifically asserts that his conviction for aggravated assault on a law enforcement officer against Officer Hirt was not supported by sufficient evidence because Officer Hirt testified that he was not in the hotel room and that McCoy never directly pointed a gun at him. McCoy voiced these concerns with Pickering before she filed the brief in his direct appeal, but Pickering did not include the issue in her brief.

McCoy argues that he was prejudiced by Pickering's failure to raise this argument in his direct appeal. But the failure of appellate counsel to raise an issue on appeal is not,

18

per se, ineffective assistance of counsel. *Laymon v. State*, 280 Kan. 430, 439, 122 P.3d 326 (2005).

> "'In an appeal from a criminal conviction, appellate counsel should carefully consider the issues, and those that are weak or without merit, as well as those which could result in nothing more than harmless error, should not be included as issues on appeal. Likewise, the fact that the defendant requests such an issue or issues to be raised does not require appellate counsel to include them. Conscientious counsel should only raise issues on appeal which, in the exercise of reasonable professional judgment, have merit.'" 280 Kan. at 440 (quoting *Baker v. State*, 243 Kan. 1, 10, 755 P.2d 493 [1988]).

As the trial court acknowledged in its ruling, Pickering argued in McCoy's direct appeal that the five convictions for aggravated assault on a law enforcement officer were multiplicitous. See *McCoy*, 2015 WL 3632037, at *17. They all involved McCoy waiving a gun around in the room as officers entered. In reviewing that claim, the panel noted the conviction for aggravated assault against Officer Hirt required additional analysis because it arose from the same conduct as the other four aggravated assaults. 2015 WL 3632037, at *19. Ultimately, the panel concluded the charges were not multiplicitous because the statute allowed multiple convictions arising out of the same conduct. 2015 WL 3632037, at *20.

At trial, Officer Hirt testified that he was standing outside the room to the right when the other officers entered the room. He heard the officers yell "'gun'" and "'drop the gun.'" Officer Hirt looked into the room and saw McCoy with his arm wrapped around Spencer—while also holding a gun in that hand with his finger in the trigger well—and the other arm holding A.M. Officer Hirt never saw the gun pointed at him but he was concerned for his safety because the gun was moving around a lot.

Simply put, McCoy fails to establish ineffective assistance for not raising a sufficiency challenge on this conviction. Even if omitting the argument amounted to

19

deficient performance, there is no reasonable probability that the outcome would have been different. A rational fact-finder viewing Officer Hirt's testimony in the light most favorable to the State could have convicted McCoy on this charge. See *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018) (articulating standard of review for sufficiency challenge on appeal).

*McCoy's cumulative error argument fails.*

As a final argument, McCoy contends that the cumulative effect of the alleged errors by trial and direct appeal counsel deprived him of his Sixth Amendment right to counsel, and that he was denied a fair trial as a result. His cumulative error argument is unpersuasive for one very fundamental reason: McCoy has established no errors.

In considering a cumulative error claim, the test is whether the totality of the circumstances reveal that the defendant was substantially prejudiced by cumulative errors and was denied a fair trial. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). Courts regularly find no cumulative error when the record supports no errors raised on appeal. *State v. Marshall*, 303 Kan. 438, 451, 362 P.3d 587 (2015). Even a single error cannot support reversal under the cumulative error doctrine. *State v. Gonzalez*, 307 Kan. 575, 598, 412 P.3d 968 (2018). Because McCoy has not established that he was prejudiced by any of the alleged errors discussed above, the cumulative error doctrine does not apply.

In sum, the trial court did not err when it denied McCoy's K.S.A. 2019 Supp. 60-1507 motion.

Affirmed.

* * *

20

ATCHESON, J., concurring:  I concur in the result affirming the Reno County District Court's denial of Deron McCoy Jr.'s motion for habeas corpus relief under K.S.A. 2019 Supp. 60-1507.