**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**September 10, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1315-CR**

Cir. Ct. No. **2019CT887**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT III**

---

STATE OF WISCONSIN,

　PLAINTIFF-RESPONDENT,

V.

JENNIFER MOUSTAFA,

　DEFENDANT-APPELLANT.

---

　　　　APPEAL from a judgment of the circuit court for Outagamie County: CARRIE A. SCHNEIDER, Judge. *Affirmed*.

　　　¶1　　HRUZ, J.[1]　Jennifer Moustafa appeals a judgment convicting her of operating a motor vehicle while intoxicated (OWI), as a first offense and with a passenger under sixteen years old in the vehicle. Moustafa argues that the circuit court erred by denying her motion to suppress evidence. Specifically, she contends

---

　　　　[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

that law enforcement officers impermissibly entered the curtilage of her home and that, accordingly, all evidence obtained as a result of that encounter should have been suppressed. We reject Moustafa's arguments and affirm.

## BACKGROUND

¶2 The State charged Moustafa with OWI and operating with a prohibited alcohol concentration (PAC), both with a passenger under sixteen years old in the vehicle and both as first offenses. According to the criminal complaint, law enforcement received a reckless driving complaint about a vehicle driving on the sidewalk and hitting curbs. The reporting party provided a license plate number for the vehicle, and law enforcement learned that the vehicle was registered to Moustafa. Two officers proceeded to Moustafa's address and made contact with Moustafa after she emerged from the back door of her residence. Following field sobriety testing and a preliminary breath test, Moustafa was placed under arrest for OWI.

¶3 Moustafa moved to suppress, arguing that the officers impermissibly approached her within the curtilage of her home. At the suppression hearing, Officer Phillip Akins testified that he and Sergeant Anthony Rosetti responded to Moustafa's apartment following the reckless driving complaint. Akins knocked on the front door of the apartment, but no one answered. In the meantime, Rosetti radioed Akins and stated that he had located the vehicle that was the source of the reckless driving complaint in a parking lot behind the apartment building. Rosetti then notified Akins that "a female had come out the back door or the back porch of the residence."

¶4 Akins proceeded to the back of the residence by walking around the north side of the apartment building, and he found Rosetti speaking to Moustafa.

2

Akins testified that the area where Rosetti and Moustafa were located was not "enclosed to the point where you had to open something to get into it." Akins' body camera video was introduced into evidence during the suppression hearing, as were two still photographs taken from that video.

¶5 Rosetti testified that on the evening in question, he responded to Moustafa's address and approached the patio area at the back of her residence. He intended to proceed into the patio area and knock on the apartment's back door. As he approached, however, Moustafa exited the back door of the apartment. Rosetti then entered the patio area and made contact with Moustafa.

¶6 Moustafa testified that her residence is a townhome and that she considers the patio area in back of the residence to be her "backyard" and a "private area." She explained that she uses the patio for grilling and bonfires, that her son has a swing on the patio, and that she also gardens and entertains guests there. She further testified that her family stores property and their garbage can on the patio.

¶7 The circuit court asked Moustafa several questions about Exhibit 2, which is one of the photographs from Akins' body camera video. In response to the court's questions, Moustafa explained that when the photograph was taken, Akins was standing in a parking lot adjacent to her patio, where she and others park their vehicles. She testified that the parking lot is "supposed to be one-way traffic so you could come in one way off of one street and exit through the other street."

¶8 On cross-examination, Moustafa conceded that she uses the patio area behind her apartment to enter and exit her residence. She also conceded that Akins' body camera video shows a mat outside of her patio door bearing the word "Welcome." When the State asked Moustafa about a "gap in the fencing" around the patio, she responded, "[T]he only reason that that's not finished off is because

3

that's where the parking spot would be. So it's kind of closed off by that parking space. When both cars are[] there[,] it would be totally enclosed."

¶9    Following briefing by the parties, the circuit court denied Moustafa's suppression motion in an oral ruling. After making various factual findings and considering the four factors set forth in *United States v. Dunn*, 480 U.S. 294, 301 (1987), the court concluded that the patio area where the officers made contact with Moustafa is not part of the curtilage of her home.

¶10    Moustafa subsequently entered a no-contest plea to the OWI charge, and the PAC charge was dismissed. Moustafa now appeals, arguing that the circuit court erred by denying her suppression motion.

## DISCUSSION

¶11    "In reviewing a ruling on a motion to suppress, this court applies a two step standard of review." *State v. Anderson*, 2019 WI 97, ¶19, 389 Wis. 2d 106, 935 N.W.2d 285. First, we uphold the circuit court's findings of fact unless they are clearly erroneous—that is, against the great weight and clear preponderance of the evidence. *Id.*, ¶20. Second, we independently review the application of constitutional principles to those facts. *Id.*

¶12    Both the Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution protect against unreasonable searches and seizures. *State v. Robinson*, 2010 WI 80, ¶24, 327 Wis. 2d 302, 786 N.W.2d 463. "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (citation omitted). The protection afforded by the Fourth Amendment also extends to a home's curtilage. *State v.*

*Martwick*, 2000 WI 5, ¶26, 231 Wis. 2d 801, 604 N.W.2d 552. The curtilage "is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life,' and therefore has been considered part of home itself for Fourth Amendment purposes." *Oliver v. United States*, 466 U.S. 170, 180 (1984) (citation omitted).

¶13 Courts "have defined the curtilage … by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." *Id.* Specifically, when determining the extent of a home's curtilage, a court should consider the following four factors:

> the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*Dunn*, 480 U.S. at 301.

¶14 In this case, the circuit court concluded that the four *Dunn* factors, on balance, did not support a determination that the patio area lies within the curtilage of Moustafa's home. Based on the court's factual findings—none of which are clearly erroneous—we agree with the court's conclusion in that regard.

¶15 Addressing the first *Dunn* factor, the circuit court noted that the patio is "immediately adjacent" to Moustafa's residence. This factor weighs in favor of a conclusion that the patio is within the home's curtilage.

¶16 The second *Dunn* factor, however, weighs against that conclusion. The circuit court found that the patio area is not fully enclosed, that there is "more open area than enclosed area," that it would not be possible to install a "traditional sized gate" on the side of the patio adjacent to the apartment building's parking lot,

and that the patio is "completely observable" by individuals traveling through the parking lot.

¶17    None of these factual findings are clearly erroneous. Akins' body camera video and the photographs from the video show that the south side of the patio—the side closest to the neighboring apartment's patio—is almost fully fenced. There is, however, a small gap between the fence panels on the south side of the patio and the fence panels on the west side—that is, the side adjacent to the parking lot. Moreover, the fence panels on the west side of the patio extend across only about one-third of that side, with the remaining space being completely open. In addition, while there is fencing on the north side of the patio—the side closest to the street—there is a significant gap between that fencing and the corner of the apartment building. The photographs and video therefore confirm that the patio is not fully enclosed, that there are substantial gaps in the fencing around the patio, and that the patio can be readily observed—and accessed—by individuals coming around the side of the building and traveling through the adjacent parking lot.

¶18    Moustafa argues that for purposes of the second *Dunn* factor, it is immaterial that the patio area is not fully enclosed. According to Moustafa, "[w]hat is important is the demarcation of the area. The fencing, greenery and obvious patio slab clearly mark the area in question." Moustafa relies on *Dunn* in support of this proposition. Her argument, however, is unpersuasive.

¶19    The property at issue in *Dunn* was a 198-acre ranch that was completely enclosed by a perimeter fence. *Id.* at 297. The property contained a residence, which was surrounded by a separate fence, and two barns that were located about fifty yards from the fence surrounding the home. *Id.* The issue on appeal was whether one of those barns was outside the home's curtilage. *See id.* at

6

301-03. In analyzing the second *Dunn* factor, the United States Supreme Court stated it was "significant" that the barn "did not lie within the area surrounding the house that was enclosed by a fence." *Id.* at 302. The Court continued, "Viewing the physical layout of respondent's ranch in its entirety, it is plain that the fence surrounding the residence serves to demark a specific area of land immediately adjacent to the house that is readily identifiable as part and parcel of the house." *Id.* (citation omitted). In contrast, the barn—which was partially enclosed by its own fence—"st[ood] out as a distinct portion of respondent's ranch, quite separate from the residence." *Id.*

¶20 Thus, the residence in *Dunn* was completely surrounded by a fence, which "demark[ed]" the area within the fence as "part and parcel of the house." *Id.* Here, in contrast, the patio area is not completely enclosed. Instead, there are significant gaps in the fencing, which would easily permit an individual to enter into and view the patio from outside. While Moustafa emphasizes that there is "greenery" within those gaps, our review of the photographs and video confirms that the plants would not prevent an outsider from viewing the patio area or entering it through the gaps in the fencing.

¶21 Turning to the third *Dunn* factor—the nature of the uses to which the area is put, *see id.* at 301—the circuit court essentially determined that this factor did not strongly favor either the State or Moustafa. The court accepted the defense's assertion that Moustafa primarily uses the patio area for private relaxation. Nevertheless, the court also found that the patio area is "a main path" for entering Moustafa's home. That finding is not clearly erroneous, as Moustafa herself testified that she uses the patio to enter and exit her residence. Given the evidence presented at the suppression hearing, we agree that this factor does not strongly favor either party's position.

¶22 Finally, the fourth *Dunn* factor—the steps taken by the resident to protect the area from observation by people passing by, *see id.*—supports the State's argument that the patio area is not within the curtilage of Moustafa's home. The circuit court found that the patio is "rather open" and can easily be viewed from outside due to the significant gaps in the fence. In fact, the court found that there is "a significant open area from which the back door is completely observable." The court further found that the back of Moustafa's residence faces a parking lot for the apartment building, "and there is a roadway to drive through or a thoroughfare to drive through that parking lot area." The court found that a vehicle parked in the parking area would be "within a few feet" of the patio. The court stated, "So even if someone [were] traveling through the parking lot or in that area, it's not like you're looking across a field to see the area in the back of this home."

¶23 Our review of the photographs and video confirms that these findings are not clearly erroneous. A person walking around Moustafa's apartment building on the side closest to the street or traveling through the parking lot could easily view her patio, despite the fence panels partially surrounding it. As the State aptly notes, "No efforts were made by Moustafa to complete the fencing and close the area off from observation."

¶24 Having considered all four of the *Dunn* factors, we conclude that one of those factors does not clearly favor either party, one factor favors Moustafa, and two factors favor the State. On this record, we agree with the circuit court that the *Dunn* factors, as a whole, do not support a determination that Moustafa's patio is within the curtilage of her home. As such, the officers did not violate the Fourth Amendment by entering the patio to make contact with Moustafa, and the court properly denied her suppression motion.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.